Willie Mae WILLIS, Administratrix on behalf of the Estate of Daniel Willis, Plaintiff,

v.

Officer Ronald TILLROCK, Individually and as Police Officer for the City of Chicago, Defendant.

No. 74 C 2852.

United States District Court, N. D. Illinois, Eastern Division.

Sept. 20, 1976.

Elaine K. Hyman, Montclair, N. J., Donald T. Bertucci, Chicago, Ill., for plaintiff.

William R. Quinlan, Corp. Counsel, Chicago, Ill., for defendant.

## MEMORANDUM OF DECISION

FLAUM, District Judge:

This decision shall constitute this court's findings of fact and conclusions of law pursuant to Rule 52(a) following trial of this cause on June 24 and 25, 1976. This is an action for an alleged deprivation of plaintiff's decedent's civil rights in violation of 42 U.S.C. § 1983. Jurisdiction of this court is based on 28 U.S.C. § 1331 and § 1343(3) and venue is proper in this district.

The plaintiff, Willie Mae Willis, is the natural mother of the decedent, Daniel Willis, and the duly appointed administratrix of his estate. At all times relevant to this action the defendant, Ronald Tillrock was a police officer with the Chicago Police Department assigned to the Tenth District acting under color of state law within the scope of his employment. The alleged deprivation of plaintiff's decedent's civil rights occurred on February 27, 1974 when defendant Tillrock shot Willis under circumstances which will be further described herein. Several hours later, Willis died as a result of that bullet wound at St. Anthony Hospital, Chicago, where he had been taken for emergency treatment.

On the morning of February 27, 1974, the decedent, Daniel Willis, and two others, Sylvester Dunn and Burley Brown, entered the first floor apartment at 2105 South St. Louis without the permission of the tenant and with the intention of committing a theft. The police were summoned to the scene and several officers, including defendant Tillrock, were assigned to respond. During the search of the premises Dunn and Brown were apprehended in the apart-

ment and placed under arrest. The decedent Willis was not apprehended with Dunn and Brown because he had concealed himself in the closet in a small, poorly lit bedroom of the apartment by covering himself with a blanket, bedspread or articles of clothing. The closet door was open as defendant Tillrock and another officer, Officer Cichy, began to search the bedroom with their revolvers drawn. Although the defendant does not now recall the statement, the court finds credible Officer Cichy's testimony that defendant Tillrock reached the closet door area, and issued the command "Okay, come out with your hands up." The decedent did not respond verbally to the command. The decedent's right hand came out from under the blanket, bedspread or articles of clothing. The hand was covered by a white work glove, and it was at a low level because decedent was crouching in the closet. Both defendant Tillrock and Officer Cichy saw the decedent's gloved hand moving outward and upward at a rapid pace. The location of a large chest of drawers in proximity to the closet door restricted the defendant's mobility and as the decedent's gloved hand moved in the direction of his gun, defendant Tillrock stepped back and fired at the decedent's hand.

When the defendant fired the shot, the distance between defendant Tillrock's revolver and the decedent's gloved hand was at least two feet. This determination is based on a scientific analysis of the decedent's glove which revealed no residual matter suggesting the presence of gunpowder, metal fragments or grease. A firing test performed with the defendant's revolver in May of 1974 with the same type of ammunition used by defendant Tillrock when the decedent was shot, indicates that gunpowder residual matter will be present on a target when the muzzle to target distance is between zero and twenty four inches. While this test is not conclusive because the defendant's revolver had been cleaned subsequent to the shooting but prior to the test and the test chamber was unable to recreate the angle at which the shooting took place, it is sufficiently accurate to support a finding that the distance between the muzzle of defendant's revolver and the decedent's hand was at least two feet.

The defendant fired a single shot at the decedent's hand and the hand was struck by that shot. The same shot also struck the decedent in the chest and that wound caused his death. A search of the decedent after the shooting revealed that he had not been armed.

The court finds that at the time defendant Tillrock fired his revolver at the decedent's hand he reasonably believed that such force was necessary to prevent imminent death or great bodily harm to himself because the decedent appeared to be grabbing for his gun.

Immediately after the shooting, the defendant told Officer Marczak that the decedent lunged out at him and he told Officer Jackson that the decedent jumped out at him. The defendant also told Officer McLane that after the shot was fired the decedent staggered and fell out of the closet. The plaintiff has argued that these contemporaneous statements are inconsistent with the evidence adduced at trial and that by describing the incident in such terms, the inference is raised that the defendant believed that he had used excessive force at the time of the shooting. The court declines to adopt this interpretation. The language used by the defendant reflects the excited and emotional climate surrounding the incident. The court finds no significant inconsistency in describing the forward reaching action of the decedent as a jump or lunge, as it was sudden, unexpected, threatening and aimed at defendant's weapon or person. Additionally, the defendant's statement that the decedent staggered and fell out of the closet, while not accurate in light of the evidence adduced at trial that the decedent fell forward as a result of the wound and did not fall completely outside of the closet, is not found to be a recognition by the defendant that he believed he used excessive force. This statement as well as the other contemporaneous ones can be sufficiently recon-

ciled with the facts elicited at trial, as they reflect a rapid forward movement by the decedent toward the defendant or his weapon. The defendant's testimony two years later in a quiet courtroom, while not identical with the spontaneous statements made at the occurrence, does not raise in the court's mind a damaging challenge to the defendant's credibility. The language used by defendant at the time of the shooting characterized his perception of the decedent's forward reaching movement. The intervening time and distance may have served to refine or modulate the defendant's assessment of the event, but his immediate responses, with the exception of the one regarding the ultimate location of the decedent's body, are basically consistent with the events as the court finds them to have occurred. Thus the court declines to adopt the plaintiff's suggested inference that the defendant believed he used excessive force at the time of the shooting.

In making these findings of fact the court has relied heavily on the testimony of Officer Cichy as the court found him to be a credible and disinterested occurrence witness. Defendant Tillrock's testimony appeared to be frank to the best of his recollection and the court found him to be a credible witness.

■ The plaintiff's complaint seeks recovery on the theory that the defendant's acts were "in violation of 42 U.S.C. §§ 1983 and 1988 and in violation of the Illinois Wrongful Death Act . . . and the Illinois Survival Act." Ill.Rev.Stat. ch. 70, §§ 1 and 2 and Ch. 3, § 339 (1975). It is unclear from the language of the complaint whether plaintiff relies on the Illinois claims as a separate basis for relief as a pendent law claim, or relies on the Illinois statutes to furnish "suitable remedies" pursuant to section 1988. The Illinois statutory claims were not addressed by the plaintiff in the post trial briefs or in the presentation of evidence. Moreover, the evidence introduced at trial is insufficient as a matter of law to establish that the plaintiff's decedent exercised due care at the time of the shooting, thus Illinois law precludes re-

covery. *See, e. g., Primmer v. Hunter,* 24 Ill.App.2d 449, 164 N.E.2d 630 (1960). Alternatively, if plaintiff relies on these Illinois statutes for the section 1988 claim, the disposition is dependent on the plaintiff's section 1983 claim. *See, e. g., Reed v. Philadelphia Housing Authority,* 372 F.Supp. 686 (D.C.Pa.1974). Thus the issue before the court is whether the plaintiff has proved by a preponderance of the evidence that the defendant deprived the decedent of his civil rights in violation of section 1983.

■ In support of the section 1983 claim, the plaintiff argues that the defendant's actions were beyond the scope of permissible use of deadly force delineated in Ill.Rev. Stat. ch. 38, § 7–5 (1975). That provision is directed to a peace officer's use of force in making an arrest and provides that "he is justified in using force likely to cause death or great bodily harm only when he reasonably believes that such force is necessary to prevent death or great bodily harm to himself . . . ." Plaintiff also argues that the defendant's actions were in violation of Chicago Police Department General Orders 67–14 and 74–12 which state that "the following acts are forbidden . . . 5) Firing into buildings or through doors, windows or other openings when the person lawfully fired at is not clearly visible." However, as the issue before the court is whether defendant Tillrock's use of deadly force in these circumstances violated the decedent's federally protected rights, the test is a constitutional one. Thus the state statute and the department orders are pertinent but not dispositive in the federal inquiry. *Screws v. United States,* 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945).

The gravamen of the section 1983 claim is that the defendant while acting under color of state law, deprived the decedent of rights, privileges, and immunities secured by the Constitution. Specifically, this action rests on the fourth amendment right of the people to be secure in their persons from unreasonable seizures and the fourteenth amendment guarantee that a state shall not deprive any person of liberty without due process of law. In analyzing this

constitutional issue several courts have reasoned that the fourth and fourteenth amendments protect persons from arbitrary police action and have adopted a standard of proof of gross and culpable negligence, gross and wanton conduct, or conduct that shocks the conscience of the court, to satisfy the arbitrariness requirement. *See, e. g., Jenkins v. Averett,* 424 F.2d 1228 (4th Cir. 1970); *Johnson v. Glick,* 481 F.2d 1028 (2d Cir. 1973). This approach does not impose a requirement of proof of intent to deprive a person of a federal right, *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) rather it infers this intent from the arbitrary conduct as defined above. The defendant has argued that plaintiff's allegation of mere negligence is insufficient for recovery under this authority.

The reasoning of this authority has not been adopted in the Seventh Circuit, however, and a civil rights action may rest on allegations of unreasonable and unnecessary state conduct. *Collum v. Butler,* 421 F.2d 1257 (7th Cir. 1970); *Hardwick v. Hurley,* 289 F.2d 529 (7th Cir. 1961). *Cf. Joseph v. Rowlen,* 402 F.2d 367 (7th Cir. 1968). More recently the Seventh Circuit has approached this issue in terms of unreasonable and excessive use of force under the circumstances. *Clark v. Ziedonis,* 513 F.2d 79, 81 (7th Cir. 1975). The plaintiff's complaint alleges that the defendant shot the decedent "negligently and without reasonable cause or justification" and the court finds that this language adequately states a claim in this circuit under section 1983. However, the court finds that the evidence adduced at trial fails to establish by a preponderance of the evidence that the force used by the defendant was unreasonable and excessive under the circumstances.

As set forth in this court's findings of fact, the defendant responded to the police directive, witnessed two persons being arrested at the scene of a crime, and investigated the premises for other accomplices. In a small poorly lit room where furniture restricted mobility, defendant stood near the door of the closet and issued a command to the person he sensed was concealed there to come out with his hands up. No verbal response was forthcoming, instead a gloved hand reached upwardly and outwardly toward the defendant or his weapon at a rapid pace. Under these circumstances, the court finds that the defendant reasonably believed that the use of deadly force was necessary to prevent death or great bodily harm to himself, thus the use of that force was not unreasonable or excessive. Ill.Rev. Stat. ch. 38, § 7–5 (1975). This determination has a two pronged effect in that it negates the plaintiff's claim that defendant used unreasonable and excessive force and it establishes the defendant's common law defense to this civil rights action. *Clark v. Ziedonis,* 513 F.2d 79 (7th Cir. 1975); *Hampton v. City of Chicago,* 484 F.2d 602 (7th Cir. 1973).

Accordingly, based on these findings of fact and conclusions of law, the court hereby enters judgment for the defendant on the plaintiff's civil rights complaint, with each party to bear its own costs.