Rosemary POPOW, as General Administratrix and Administratrix ad Prosequendum of the Estate of Darwin Popow, Deceased, and Rosemary Popow, Individually, Plaintiffs,

v.

CITY OF MARGATE, a municipal corporation, and George Biagi, Defendants.

Civ. A. No. 78–1536.

United States District Court, D. New Jersey.

Aug. 31, 1979.

---

| Date | Amount Due | Interest through September 4, 1979 |
|---|---|---|
| 10/16/73 | $ 66,364 | (5.88 years) (0.06 per year) = $23,413 |
| 10/16/74 | 69,734 | (4.88 years) (0.06 per year) = 20,418 |
| 3/31/76 | 145,252 | (3.47 years) (0.06 per year) = 30,241 |
| | $281,350 | $74,072 |

Lewis B. April, Mary Reiss, Cooper, Perskie, Katzman, April, Niedelman & Wagenheim, Atlantic City, N. J., for plaintiffs.

Jack Gorny, Gerald Faber, Horn, Kaplan, Goldberg & Gorny, Atlantic City, N. J., for defendants.

OPINION

BROTMAN, District Judge.

In this civil rights action under 42 U.S.C. § 1983, plaintiff Rosemary Popow, individually and as administratrix of the estate of her husband Darwin Popow, seeks damages for his death. Darwin Popow was shot dead by a City of Margate police officer who was pursuing another man he believed to be a fleeing kidnapper. An innocent bystander, the decedent was killed after stepping outside his home on a residential street in Margate in response to the commotion. Defendants include the City of Margate and George Biagi, the police officer who fired the fatal shot. In addition to the cause of action pleaded pursuant to § 1983, with jurisdiction premised upon 28 U.S.C. §§ 1343(3) and 1331, plaintiff asserts pendent state claims pursuant to the New Jersey Tort Claims Act, N.J.S.A. 59:1–1 *et seq.*

Before the court is a motion for summary judgment by defendants, Fed.R.Civ.P. 56, in which they argue that plaintiff has stated no claim cognizable under § 1983, and that the court accordingly has no pendent jurisdiction over the state law claims. Officer Biagi argues that the allegations amount to no more than negligent conduct on his part, which is an insufficient basis for a § 1983 suit. The City of Margate argues that there is no allegation or evidence of unconstitutional official policy or custom sufficient to establish liability. Finally, both defendants assert that the factual allegations in the complaint state no claim of deprivation under the fourth, fifth, eighth, and fourteenth amendments.

The issues raised in this motion admit of no easy resolution; the law on the subject of both negligence as a basis for a civil rights action and of municipal liability for police action is unsettled, with no clear guiding precedent from the Supreme Court or from the Third Circuit Court of Appeals. After a careful review of the case law and consideration of the problem, the court concludes that the motion must be denied as to both defendants.

1. *Officer Biagi.*

Counts I and III of the complaint allege that Biagi used excessive force and acted in a "reckless, malicious, unlawful, and negligent manner," which caused the death of Darwin Popow. Biagi relies primarily on *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), for his argument that the negligent shooting of an innocent bystander does not state a claim under § 1983. Plaintiff counters that even if simple negligence is not actionable in a § 1983 suit, gross negligence is. She argues that the pleadings and the deposition testimony demonstrate a genuine issue of material fact as to whether Biagi's actions constitute more than simple negligence.

To prevail in a civil rights action under § 1983, a plaintiff must establish two elements: (1) that the defendant has deprived him of a right secured by the Constitution and (2) that such deprivation was caused by a person acting under color of state law. *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In this case, the primary constitutional claim is that defendants violated the decedent's right to life without due process of law, as explicitly guaranteed by the fourteenth amendment.

*Paul v. Davis, supra,* is one of a line of Supreme Court opinions limiting the use of the fourteenth amendment's "life, liberty and property" clause as the sole source of the right allegedly violated under the first element in a § 1983 suit. The five-justice majority held that there was no deprivation of a constitutional right where state officials placed the plaintiff's name and picture on a list of "active shoplifters," although he had never been convicted of shoplifting. Justice Rehnquist reasoned that reputation is not a liberty or property interest protected by the fourteenth amendment. While this holding is relatively narrow, Justice Rehnquist expressed a broader dissatisfaction with including torts within the scope of civil rights actions, simply because the defendant is a state official. He posited the very fact situation now before the court:

". . . [S]ince it is surely far more clear from the language of the Fourteenth Amendment that 'life' is protected against state deprivation than it is that reputation is protected against state injury, it would be difficult to see why the survivors of an innocent bystander mistakenly shot by a policeman or negligently killed by a sheriff driving a government vehicle, would not have claims equally cognizable under 1983.

"It is hard to perceive any logical stopping place to such a line of reasoning. Respondent's construction would seem almost necessarily to result in every legally cognizable injury which may have been inflicted by a state official acting under 'color of law' establishing a violation of the Fourteenth Amendment. We think it would come as a great surprise to those who drafted and shepherded the adoption of that Amendment to learn that it worked such a result, and a study of our decisions convinces us they do not support the construction urged by respondent."

*Id.* 424 U.S. at 698–99, 96 S.Ct. at 1159.

As defendant candidly acknowledges, this is pure dictum, addressed to a general concern that if all negligent conduct on the part of state officials may be the subject of a § 1983 action, a generalized federal tort law will usurp the traditional role of state law in the area. But in two subsequent cases in which the Supreme Court granted certiorari on the question of whether negligent deprivations of constitutional rights may be the basis for § 1983 suits, the cases were resolved on other grounds. *Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978) (good faith immunity shielded defendants from liability for negligent interference with prisoner's outgoing mail); *Baker v. McCollan*, —— U.S. ——, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) (3-day imprisonment of wrong person based upon facially valid warrant not a constitutional deprivation). In the latter case, Justice Rehnquist, the author of the *Paul v. Davis* opinion, wrote for the majority:

"Having been around this track once before in *Procunier, supra,* we have come to the conclusion that the question whether an allegation of simple negligence is sufficient to state a cause of action under § 1983 is more elusive than it appears at first blush. It may well not be susceptible of a uniform answer across the entire spectrum of conceivable constitutional violations which might be the subject of a § 1983 action."

—— U.S. at ——, 99 S.Ct. at 2692.[1] Thus, *Paul v. Davis* is not the last word from the high court on the question.

This court's review of the case law indicates that it would be a departure from the settled analysis of § 1983 actions to hold that, where the two elements of constitutional deprivation and causation accomplished under color of state law are present, there is nevertheless no cause of action stated because defendant's actions are negligent in that he did not intend to injure the particular plaintiff. In *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), the Supreme Court refused to read into § 1983 a requirement that defendant's actions be willful, analogous to that in the criminal civil rights provision construed in *Screws v. United States*, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945). The *Monroe* Court stated that § 1983, which provides a civil remedy, "should be read against the

---

1. Defendants cite *Delgado v. Newark*, 165 N.J. Super. 477, 398 A.2d 604 (L.Div.1979) as a case in which the dictum of *Paul v. Davis, supra,* was applied to dismiss the § 1983 claim of an innocent bystander injured by police gunfire during a disturbance. However, our reading of *Delgado* indicates that while the state trial court quoted the *Paul v. Davis* passage on bystanders, it did not rely on it to reach its result. Instead, the court held that allegations of simple negligence causing injury did not implicate any specific constitutional right because the requisite liberty or property interest did not exist. *Id.* 165 N.J.Super. at 481–82, 398 A.2d 604. Without expressing an opinion on the reasoning employed in *Delgado,* we distinguish the instant case on two grounds: (1) this case involves the deprivation of life without due process, a right specifically guaranteed by the fourteenth amendment, and (2) plaintiff in this case has alleged more than simple negligence. The second distinction is particularly significant, as is discussed *infra.*

background of tort liability that makes a man responsible for the natural consequences of his actions." *Id.* at 187, 81 S.Ct. at 484. The Third Circuit Court of Appeals in *Howell v. Cataldi*, 464 F.2d 272 (1972), stated that while this language is not to be read as implying that § 1983 provides a federal remedy for any tort actionable under state law, "[o]nce there is recognition of the [constitutional] right sought to be vindicated, the proof of the deprivation proceeds 'against the background of tort liability.'" *Id.* at 279.

■ It is beyond dispute that one killed by a state police officer is deprived of his fourteenth amendment right to life. *E. g., Screws v. United States, supra* 325 U.S. at 117, 65 S.Ct. 1031; *Jones v. Marshall*, 528 F.2d 132, 136 n. 9 (2nd Cir. 1975); *Jones v. McElroy*, 429 F.Supp. 848, 851 (E.D.Pa. 1977).[2] In cases where a criminal suspect is shot and killed by police while attempting escape, the courts have held that his survivors may state a claim under § 1983. *See, e. g., Landrum v. Moats*, 576 F.2d 1320 (8th Cir. 1978), *cert. denied*, 439 U.S. 912, 99 S.Ct. 282, 53 L.Ed.2d 258 (1979); *Russ v. Ratliff*, 538 F.2d 799 (8th Cir. 1976), *cert. denied*, 429 U.S. 1041, 97 S.Ct. 740, 50 L.Ed.2d 753 (1977); *Jones v. Marshall, supra*; *Jones v. McElroy, supra*; *Willis v. Tillrock*, 421 F.Supp. 368 (N.D.Ill.1976). In this court's opinion, it would create an unfair anomaly to hold that the escapee who is killed by police has a cause of action for damages under § 1983 while the innocent bystander who is killed does not. Both have been deprived of life in an arbitrary, summary fashion inconsistent with due process.

It could be argued that since *Monroe v. Pape, supra*, involved an illegal search and seizure which is an intentional act, its holding that wilfullness is not a required ele-

ment of proof in a § 1983 action is limited to that context. However, this court finds this an unsatisfactory manner of distinguishing the instant case; here, unlike the case of a purely accidental shooting, the police officer meant to shoot his gun, so that there was a general intent to do the act which caused the injury. Thus, in this sense, the case at bar is like *Monroe*, and the many cases in which § 1983 suits have been maintained based upon injury inflicted by police beatings or shootings under the "liberty" provision of the fourteenth amendment due process clause. *See, e. g., Aldridge v. Mullins*, 474 F.2d 1189 (6th Cir. 1973) (*per curiam*); *Howell v. Cataldi, supra*; *Smartt v. Lusk*, 373 F.Supp. 102 (M.D. Tenn.1972) (citing cases at 104), *aff'd*, 492 F.2d 1244 (6th Cir. 1973); *Basista v. Weir*, 340 F.2d 74 (3rd Cir. 1965); *Cook v. City of Miami*, 464 F.Supp. 737 (S.D.Fla.1979); *Culp v. Devlin*, 437 F.Supp. 20 (E.D.Pa. 1977).

■ Plaintiff argues that even if simple negligence is not sufficient to constitute a constitutional violation, gross negligence or recklessness would be. The court agrees. All the cases in which negligence has been held an insufficient basis for a § 1983 liability have limited that conclusion to simple negligence. *See, e. g., Bonner v. Coughlin*, 545 F.2d 565 (7th Cir. 1976) (en banc); *Parker v. McKeithen*, 488 F.2d 553 (5th Cir.), *cert. denied*, 419 U.S. 838, 95 S.Ct. 67, 42 L.Ed.2d 65 (1974); *Jenkins v. Averett*, 424 F.2d 1228 (4th Cir. 1970); *Leite v. City of Providence*, 463 F.Supp. 585 (D.R.I.1978); *Schweiker v. Gordon*, 442 F.Supp. 1134 (E.D.Pa.1977); *Jones v. McElroy, supra*. In *White v. Rochford*, 592 F.2d 381 (7th Cir. 1979), a police officer arrested the uncle of several children, leaving them abandoned. The Seventh Circuit Court of Appeals reaffirmed its holding in *Bonner, supra*, ruling

---

**2.** The other constitutional amendments which plaintiff alleges as sources of the rights allegedly violated are not applicable. It constitutes a strained construction of the fourth amendment to term a negligent killing a "search and seizure," and the court is unpersuaded by the reasoning in *Jenkins v. Averett*, 424 F.2d 1228 (4th Cir. 1970). The fifth amendment applies

to the federal government and not to the state. It does not expand the plaintiff's fourteenth amendment due process rights against the state. The eighth amendment is limited to criminal punishment. *Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977); *see also Bell v. Wolfish*, —— U.S. ——, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

that the police officer's reckless disregard for their safety is actionable under § 1983, even though there was no intention to injure the children.

■ In the instant case, the deposition testimony concerning the circumstances surrounding the shooting demonstrate a factual issue as to a level of culpability exceeding simple negligence on the part of Biagi. Both Biagi and the police officer with him at the time of the shooting, Officer Kertz, testified that they had no information or personal knowledge that the suspect was armed, had no specific reason to fear for their lives, and had not personally witnessed the suspect commit a felony. Under these circumstances, Biagi's firing his gun on a residential street at night could be determined by the finder of fact to constitute gross negligence or reckless disregard for the public's safety.[3]

■ The rationale for including grossly negligent conduct as the basis of a § 1983 suit where simple negligence is excluded is not always clearly articulated. Some courts have stated that gross negligence is the legal equivalent of an intentional act. *See White v. Rochford, supra* at 385; *Parker v. McKeithen, supra* at 556 n. 6; *Jenkins v. Averett, supra* at 1232. Other courts have analogized to eighth amendment cases dealing with medical malpractice claims of prisoners. *See Leite v. City of Providence, supra; Schweiker v. Gordon, supra.* But *see Santiago v. City of Philadelphia,* 435 F.Supp. 136 (E.D.Pa.1977). This court is of the view that gross negligence should be the subject of § 1983 actions even where simple negligence is not, because the fundamental purpose of § 1983 is to provide a remedy for abuse of official position. *Monroe v. Pape, supra* 365 U.S. at 172, 81 S.Ct.

473. The civil rights statute is aimed at redressing "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941). *See also Paul v. Davis, supra* 424 U.S. at 717, 96 S.Ct. 1155 (Brennan, J., dissenting). Gross negligence or recklessness on the part of a state official, that is, the proceeding in the face of a known danger or the total disregard of potential danger, entails abuse of official power or position which is the target of § 1983.

The question remains whether plaintiff may prevail in her § 1983 claim by proving only simple negligence. There is legal authority for that view. *See, e. g., Navarette v. Enomoto,* 536 F.2d 277 (9th Cir. 1976), *rev'd on other grounds sub nom. Procunier v. Navarette, supra; Whirl v. Kern,* 407 F.2d 781 (5th Cir.), *cert. denied,* 396 U.S. 901, 90 S.Ct. 210, 24 L.Ed.2d 177 (1969); *Norton v. McKeon,* 444 F.Supp. 384 (E.D. Pa.1977); *Santiago v. City of Philadelphia, supra; Culp v. Devlin, supra.* The Third Circuit has not specifically addressed the issue. In *Howell v. Cataldi, supra* at 279, the circuit court implied that simple negligence would be sufficient. In that case, police physically abused an arrestee in the mistaken belief that he was resisting or being uncooperative when in reality he was undergoing a diabetic seizure. The court analyzed this as an eighth amendment violation. Since the complaint did allege more than simple negligence, however, the court did not actually reach the question of whether a greater degree of culpability was required. *Id.* at 279 n. 11.

---

**3.** There is much discussion in the depositions and in plaintiff's brief on this motion about the meaning of "personal knowledge" within regulation 3:9.12(c) of the city's police department Rules and Regulations concerning the discharge of firearms.

Only the constitution itself and not state law sets the standard of conduct for state officials in § 1983 suits. *Jones v. Marshall,* 528 F.2d 132, 137 (2nd Cir. 1975). Therefore, the precise

meaning which either defendant ascribed to the police regulation is largely irrelevant in determining whether Biagi's conduct violated § 1983. Similarly, police officers' duty of care with regard to firearms under state law, which plaintiff discusses in her brief, may be relevant to whether there was gross negligence or recklessness, but is not dispositive. *See Willis v. Tillrock, supra* at 371.

In *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077 (3rd Cir. 1976), the court dealt with a damage action by pre-trial detainees alleging denial of medical care. Although the case was analyzed as a fourteenth amendment due process problem, the court applied the eighth amendment standard of deliberate indifference requiring intentional action, as established for convicted prisoners in *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1977). At least one district court in this circuit has relied on this application of an intent requirement in a fourteenth amendment case as support for the conclusion that simple negligence does not suffice to state a § 1983 claim. *Schweiker v. Gordon, supra* at 1139; *Jones v. McElroy, supra* at 862. This court, however, reads *Hampton* as simply establishing a uniform constitutional standard for all prisoners in the peculiar area of medical care. As the court of appeals stated: " . . . we do not think it appropriate to discuss the precise source of the right because, while it may have significance in other contexts, it is not controlling here." *Hampton, supra* at 1080. In *Santiago v. City of Philadelphia, supra* at 151, another district court in this circuit limited *Hampton* and *Estelle* to the eighth amendment context.[4]

Nevertheless, this court is of the opinion that the degree of culpability must exceed simple negligence and amount to gross negligence or recklessness, at least where the constitutional deprivation alleged finds its source solely within the due process clause of the fourteenth amendment. Where only simple negligence is involved, the central focus of § 1983, abuse of official power or position, is not implicated. Simple negligence implies inadvertence or mistake, usually caused by heedlessness or carelessness in the face of a risk which the reasonable person would not take. *See generally* W. Prosser, *The Law of Torts* § 31, p. 145 (4th ed. 1971). This is not a degree of culpability implying abuse of power within

the rationale of *Monroe v. Pape, supra.* Under this view of § 1983, the statute does not become a generalized federal law of torts which completely supplants that of the states where the defendant is a state official. This was the central concern of Justice Rehnquist in *Paul v. Davis, supra.*

While the court is of course cognizant of the comity concerns, we believe that where the level of culpability on the part of the state official exceeds simple negligence, the federal interest in providing a remedy suggests that Congress did not intend to defer completely to state law. The remedy under § 1983 is supplementary to that under state law, *Monroe v. Pape, supra* 365 U.S. at 183, 81 S.Ct. 473, and was designed to fill the remedial void where state law, even though adequate in theory, was not enforced in practice for whatever reason. *Id.* at 174, 176, 180, 81 S.Ct. 473. A state legislature could always refuse to waive its sovereign immunity, revoke a previous waiver, or grant a limited right of action subject to statutory immunities. For example, under the New Jersey Tort Claims Act, N.J.S.A. 59:1–1 *et seq.*, there is immunity for public employees' discretionary acts. N.J.S.A. 59:3–2. Biagi's decision to fire his gun could be construed to fall within that provision.

Since as we have stated previously there is a remaining factual question of whether Biagi was grossly negligent, plaintiff has stated a cause of action under § 1983 against him. In the interest of judicial economy and convenience, the court will exercise its discretionary pendent jurisdiction over the state law claims against this defendant. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

2. *City of Margate.*

In *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d

---

4. The dictum from *Baker v. McCollan*, quoted *supra*, that different constitutional violations may require different degrees of culpability, indicates that we should be cautious before applying in a fourteenth amendment case the standard established for an eighth amendment case, absent an independent rationale for doing so.

611 (1978), the Supreme Court construed § 1983 to include municipalities as possible defendants. However, the Court made clear that liability may not be imposed under a *respondeat superior* theory, that is, merely because the city employs a tortfeasor. *Id.* at 691–92, 98 S.Ct. 2018. *See also Hampton v. Holmesburg Prison Officials, supra* at 1082. Instead, liability must be based upon an official policy or custom which causes the injury. *Monell, supra* 436 U.S. at 694, 98 S.Ct. 2018.

Recognizing this principle, plaintiff argues that her theory of liability as to the city is direct misfeasance or nonfeasance in failing to train, supervise, and review and discipline members of the police force. Plaintiff further argues that deposition testimony indicates that the city's conduct is so inadequate as to amount to gross negligence or reckless disregard of public safety and constitutional deprivation. While the allegations in the complaint concerning the city are largely premised on *respondeat superior* theory, Count V (incorporating Counts I and III which allege violation of § 1983), may be construed to allege the direct liability theories.

The *Monell* Court cited *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), for the principle that a city may not be held vicariously liable. Therefore, although *Rizzo* involved injunctive relief and not damages as in the instant case, it is relevant in analyzing what actions of the city subject it to liability under § 1983.[5] The Supreme Court in *Rizzo* held that defendant municipalities and supervisory personnel cannot be found liable for civil rights violations perpetrated by individual police officers absent an "affirmative link between the occurrence of the various incidents of police misconduct and the adoption of any plan or policy by [the defendants]—express or otherwise—showing their authorization or approval of such misconduct." *Id.* at 371, 96 S.Ct. at 604. The finding of fact in *Rizzo* that the instances of police misconduct were not rare or isolated was not enough to establish the "causal connection" between the defendants and the constitutional violations. *See also Lewis v. Hyland,* 554 F.2d 93, 101 (3rd Cir.), *cert. denied,* 434 U.S, 931, 98 S.Ct. 419, 54 L.Ed.2d 291 (1977) (an "unfortunate insensitivity" on the part of supervisory personnel to constitutional violations by state police did not establish "causal link" needed to support injunctive relief against supervisors).

Thus, according to *Monell* and *Rizzo,* to establish municipal liability, a plaintiff must prove either (a) an official policy or custom which results in constitutional violations or (b) conduct by officials in authority evincing implicit authorization or approval or acquiescence in the unconstitutional conduct. Where a city's failure to train, supervise or discipline police officers is reckless or grossly negligent, it may fall into one of these categories and serve as the basis for holding a city liable under § 1983. *See, e. g., Leite v. City of Providence, supra ; Schweiker v. Gordon, supra ; Jones v. McElroy, supra ; Perry v. Elrod,* 436 F.Supp. 299 (N.D.Ill.1977).[6] Recently, the Second Circuit Court of Appeals, reversing the district court, relied on *Leite, supra,* and held that where a county's supervision and training of police is so severely deficient as to reach the level of gross negligence or

---

5. Other courts have relied upon *Rizzo* in the context of damage suits against municipalities or supervisors. *E. g., Duchesne v. Sugarman,* 566 F.2d 817 (2nd Cir. 1977); *Leite v. City of Providence, supra ; Smith v. Ambrogio,* 456 F.Supp. 1130 (D.Conn.1978); *Perry v. Elrod,* 436 F.Supp. 299 (N.D.Ill.1977); *Delaney v. Dias,* 415 F.Supp. 1351 (D.Mass.1976).

6. *See also McDonald v. Illinois,* 557 F.2d 596 (7th Cir. 1977); *Snow v. Winston,* 447 F.Supp. 883 (W.D.La.1978) (both cases holding that "mere negligence" of supervisory personnel is not sufficient, leaving the negative implication that more than mere negligence may give rise to a § 1983 claim).

There are also cases holding that simple negligence in training, supervision or discipline of police is sufficient to state a civil rights claim. *See Carter v. Carlson,* 144 U.S.App.D.C. 388, 447 F.2d 358 (1971), *rev'd on other grounds sub nom. District of Columbia v. Carter,* 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973); *Norton v. McKeon, supra* (following *Santiago v. City of Philadelphia, supra* ); *Culp v. Devlin, supra.*

deliberate indifference to deprivation of constitutional rights, the county could be subject to liability consistent with *Monell* and *Rizzo, supra.* *Owens v. Haas,* 601 F.2d 1242 (1979).

This court agrees that municipal liability under § 1983 can be established under these circumstances. This is consistent with our conclusion that the liability of the individual police officer may be premised only upon gross negligence, in the absence of intent to injure the plaintiff. It remains to determine if there is an issue of fact as to such conduct by the City of Margate in this case. Defendant contends in its reply brief that the deposition testimony and exhibits to which plaintiff points demonstrate at most only simple negligence.

▆▆▆ First, as to the allegations of failure to train and supervise, *Leite, supra,* indicates that a complete failure to train would qualify, as would training that is so reckless or grossly negligent as to make future police misconduct almost inevitable. "The training and supervising of these police officers must be so inadequate and the resulting conduct so probable, that the city can fairly be considered to have acquiesced in the probability of serious police misconduct." *Id.* at 591. This court adopts the *Leite* standard, construing it to require of plaintiff proof of extremely inadequate procedures. We reject the Second Circuit's recently expressed view that a single brutal incident such as the one which gives rise to the suit is alone sufficient to establish a city's liability. *Owens v. Haas, supra,* at 1246.

▆▆▆ In the instant case, the court finds that the deposition testimony as well as the answers to interrogatories, which we read in the light most favorable to plaintiff as we must on a motion for summary judgment, create a genuine question of fact as to whether the City of Margate's police department training and supervision procedures were grossly inadequate. While police officers receive training at the State Police Academy in Sea Girt, New Jersey, when they first join the force, in Biagi's case that was ten years prior to the shooting incident.

The only continuing training was shooting instruction approximately every six months at a range in Atlantic County. However, there was no instruction on shooting at a moving target, night shooting, or shooting in residential areas. Margate is almost completely residential. The possibility that a Margate police officer will in the course of his duties have to chase a suspect in a residential area at night is not in the least remote; therefore, a finder of fact could determine that the City of Margate's training of officers regarding shooting was grossly inadequate within the *Leite* standard. Furthermore, the officers viewed no films or participated in any simulations designed to teach them how the state law, city regulations or policies on shooting applied in practice.

As to supervision, there was only one meeting to explain to officers the city's regulation on shooting. This was at the time it was adopted, about two years before this incident. The instructors at the shooting range may have discussed the rules, but not in any detail. Indeed, based on the deposition testimony, there could be a conflict between Officer Kertz's understanding of the city regulation on shooting and that of Chief Creaghe. This might indicate to a finder of fact that there was inadequate communication to officers of the city's policy and rules on this subject.

Also, Chief Creaghe's testimony, viewed in the light most favorable to plaintiff, might indicate that he considered the rules on firing in residential streets a matter of mere "common sense" requiring no detailed explanation. This evidence could be found by a finder of fact to demonstrate grossly inadequate supervision.

▆▆▆ Finally, regarding discipline of officers, the rule is that where a city's procedure of reprimand is so inadequate as to ratify unconstitutional conduct, the city may be liable under § 1983. A police chief's persistent failure to discipline or control subordinates in the face of knowledge of their propensity for improper use of force

may constitute an official custom or *de facto* policy, actionable under § 1983. *See Sims v. Adams,* 537 F.2d 829 (5th Cir. 1976); *Cook v. City of Miami, supra* ; *Smith v. Ambrogio,* 456 F.Supp. 1130 (D.Conn.1978); *Schweiker v. Gordon, supra* ; *Perry v. Elrod, supra* ; *Moon v. Winfield,* 383 F.Supp. 31 (N.D.Ill.1974).

 In Margate, every police shooting incident was referred to the Atlantic County prosecutor's office for possible action. There is a reasonable inference which may be drawn from the evidence that this was a grossly inadequate method of maintaining proper standards in the police department. The evidence shows no instance in which a prosecution actually resulted, and indeed the grand jury refused to indict Biagi based upon this shooting incident. But while an officer's conduct may not be criminally actionable under state law, it may have caused a constitutional deprivation and therefore require reprimand or other punitive administrative action.

The depositions and answers to interrogatories reveal that there was no department investigation or reprimand procedure which resulted in any punishment of police officers. Chief Creaghe indicated that Biagi was reprimanded after one prior shooting incident, but his record contains no such notation. Biagi has never suffered any disciplinary action whatsoever based upon the shooting incident which is the subject of this suit or two prior shooting incidents in which he was involved. Chief Creaghe knew of these prior incidents, in 1972 and 1974, and he acknowledges that Biagi's conduct in the earlier one was wrongful. They are close enough in time and substantial enough to create an issue of fact concerning the city's failure to control in the face of knowledge of past culpable conduct. *Compare Chestnut v. City of Quincy,* 513 F.2d 91 (5th Cir. 1972) with *Moon v. Winfield, supra.* From all this evidence, a finder of fact could conclude that the city's practices

were so grossly inadequate as to give police officers the idea that their unconstitutional conduct would have no substantial adverse consequences for them.[7]

Accordingly, summary judgment is denied as to the City of Margate on the § 1983 claims, and the court will exercise its discretionary pendent jurisdiction over the state tort law claims.

---

7. There is much discussion in the briefs and depositions of training, supervision, and discipline practices as to high speed chases and the firing of warning shots. However, neither of these caused Darwin Popow's death, and are therefore irrelevant. Plaintiff is required to prove causation of the constitutional deprivation as to the City as well as the individual officer.