

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-30-2003

# Hernandez v. Palisades Park Pol

Precedential or Non-Precedential: Non-Precedential

Docket 02-2210

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Hernandez v. Palisades Park Pol" (2003). *2003 Decisions.* Paper 836.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/836

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-2210

_____

LILLIAN HERNANDEZ,

Appellant

v.

BOROUGH OF PALISADES PARK POLICE DEPARTMENT;
BOROUGH OF PALISADES PARK

_____

On Appeal From the United States District Court
For New Jersey
(D.C. 99-CIV-3956)
District Judge: Honorable W.G. Bassler

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 13, 2003

Before: SCIRICA, BARRY and SMITH, Circuit Judges

(Opinion Filed:  January 29, 2003)

OPINION OF THE COURT

SMITH, Circuit Judge:

Lillian Hernandez appeals the District Court's grant of summary judgment to

defendants.  Because we agree that appellant failed to introduce evidence of a municipal

policy or custom that caused the constitutional violations, we will affirm.

## I.   FACTS

Appellant Lillian Hernandez is a Hispanic female who lived in the Borough of Palisades Park ("Borough").  The Borough of Palisades Park Police Department had a policy of encouraging citizens to advise the department when they would be away from home.  On February 12, 1993, Ms. Hernandez informed Police Officer Michael Anderson that she would be away from home for a few days and asked him to keep an eye on her residence.  Anderson promised that he would do so.  But rather than fulfill his duty to protect Ms. Hernandez's property, Anderson, with the approval of Lt. John Giannantonio, used this opportunity to rob Hernandez's home. The robbery was part of an ongoing string of robberies which were committed by five Borough police officers beginning in 1992.[1]

On February 15, 1993, Ms. Hernandez returned from her vacation to find that nine of her fur coats had been stolen. There was another attempted burglary of Ms. Hernandez's residence on February 23, 1993, although nothing was stolen on that occasion.

In 1994, the Police Department began investigating police corruption and turned over its findings to the Bergen County Prosecutor's Office.  This investigation resulted in the indictment of Anderson and the four other police officers in 1997.  Anderson eventually pleaded guilty.

## II.   PROCEDURAL POSTURE

---

[1] The Police Department had only 17 police officers, so that approximately 30% of all the officers were involved in the burglary ring.
.

2

Appellant filed a complaint against the Borough and its Police Department under 42 U.S.C. § 1983 for violation of her rights pursuant to the First Amendment (violation of privacy), Fourth Amendment (illegal search and seizure), Fifth Amendment (taking) and Fourteenth Amendment (violation of due process and equal protection because the robberies allegedly were committed disproportionately against minority citizens). She alleged that the Police Department and Borough had a custom of committing these robberies and negligently trained and supervised the rogue officers. The District Court granted summary judgment on behalf of the defendants

## III. JURISDICTION

The District Court had subject matter jurisdiction under 28 U.S.C.§ 1331. This Court has jurisdiction over the appeal based on 28 U.S.C. § 1291.

## IV. STANDARD OF REVIEW

This Court exercises plenary review over a district court's order granting summary judgment. See Reitz v. County of Bucks, 125 F.3d 139, 143 (3d Cir. 1997). Summary judgment must be granted if "there is no genuine issue as to any material fact and [] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of fact exists "only if a reasonable jury, considering the evidence presented, could find for the non-moving party." Childers v. Joseph, 842 F.2d 689, 694 (3d Cir. 1988) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). Although the moving party must initially point out the absence of evidence necessary to the non-moving party's case, once it has done so, the burden shifts to the non-moving party to provide evidence to support each

3

element of the party's claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986).

The court must consider all evidence in the light most favorable to the non-moving party.

See Marzano v. Computer Sci., 91 F.3d 497, 502 (3d. Cir. 1996); White v. Westinghouse

Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988).  Nonetheless, the evidence produced by the

plaintiff must be more than a "mere scintilla."  Anderson, 477 U.S. at 249.

## V.    LEGAL ANALYSIS

Appellant alleges that the District Court erred in granting summary judgment to both

defendants because: 1) it required appellant to provide evidence supporting every element

of her case; 2) it resolved material issues of fact by concluding that the pattern of robberies

could not in itself put the policymaker on notice of the constitutional violations; and 3) it

failed to recognize that a municipality can be liable for failure to train its employees and

failure to adequately supervise in order to prevent corruption.[2]

First, as the District Court recognized, police departments cannot be sued alongside

municipalities because a police department is merely an administrative arm of the

municipality itself.  See Bonenberger v. Plymouth Township, 132 F.3d 20, 25 n.4 (3d Cir.

1997); Colburn v. Upper Darby Township, 838 F.2d 663, 671 n. 7 (3d Cir. 1988).

Therefore, the District Court properly granted summary judgment as to the Borough of

---

[2] Appellant also urges us to address whether her complaint was filed in a timely manner, despite the fact that this issue was not reached by the District Court.  We decline this invitation. See Virgin Island Conservation Soc., Inc. v. Virgin Island Bd. of Land Use Appeals, 881 F.2d 28, 36 (3d Cir. 1989) (refusing to engage in substantive review of issues not addressed by district court).

Palisades Park Police Department.

Second, contrary to appellant's assertions, it is proper for a district court to grant summary judgment when a plaintiff fails to produce any evidence on a necessary element of her claim. See Celotex, 477 U.S. at 323-25. Appellant need not try her case by carrying the burden of persuasion, but she must, at a minimum, produce evidence on every element of her claim.

Third, the District Court did not resolve any material issue of fact, nor did it reject the possibility that a municipality may be liable for its policies or customs. Rather, the District Court appropriately concluded that although specific police officers did commit constitutional violations, appellant introduced no evidence suggesting that the Borough had an official policy or custom of committing such violations.

The Borough may be liable for the constitutional violations of its police officers only to the extent that the injuries arose from its policies or customs. See, e.g., Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 694-5 (1978); Robinson v. City of Pittsburgh, 120 F.3d 1286, 1295-6 (3d Cir. 1997); Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996). The mere fact that Borough employees committed the burglaries is insufficient because municipalities cannot be held liable in a Section 1983 suit under the doctrine of *respondeat superior*. See id.

A policy may be made only when a policymaker issues an official proclamation or decision. See Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990) (citations omitted). A "policy-maker" is an individual with final and unreviewable authority

5

to make a decision. See Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986) (plurality op.); Beck, 89 F.3d at 971; Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990). Appellant argues that because Lt. Giannantonio probably served as the Commanding Officer at some point during his career, and the Commanding Officer is the officer in charge, Giannantonio's participation in the robbery scheme transformed that scheme into Borough policy. However, as the District Court recognized, appellant introduced no evidence to suggest that Giannantonio was the Commanding Officer at the time the robberies were taking place, or that the Commanding Officer had final authority to set municipal policy. Accordingly, even viewing the evidence in the light most favorable to appellant, she has not produced sufficient evidence to establish a Borough policy.

A custom may exist where the relevant practice is so permanent and "widespread as to have the force of law." Bryan County Commissioners v. Brown, 520 U.S. 397, 404 (1997). To show custom, the plaintiff may adduce evidence that a policy-maker (1) had notice that a constitutional violation was likely to occur, and (2) acted with deliberate indifference to the risk. See Berg v. County of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000); Beck, 89 F.3d at 971; Williams v. Borough of West Chester, 891 F.2d 458, 467 n.14 (3d Cir. 1989). Generally, notice is established through a pattern of known prior constitutional violations. See Brown, 520 U.S. at 409-10; Berg, 219 F.3d at 276; Beck, 89 F.3d at 973 (holding that pattern of written complaints of violence against an officer sufficient for reasonable jury to conclude policymaker knew or should have known of violations); Bielevicz, 915 F.2d at 851 (policymakers must be aware of similar unlawful

6

conduct in the past but fail to take action to prevent future violations).  In rare instances,

however, a constitutional violation may be such a "known and obvious" or "highly

predictable consequence" of an ongoing course of action that knowledge of past violations

is unnecessary.  Berg, 219 F.3d at 276 (holding that municipality had notice and was

deliberately indifferent to the risk of unconstitutional arrests from erroneously issued

warrants even though no mistakes had been made in the past); cf. City of Canton v. Harris,

489 U.S. 378, 390 (1989) (city liable when "in light of the duties assigned to specific

officers or employees, the need for more or different training *is so obvious* and the

inadequacy *so likely to result in the violation of constitutional rights*, that the

policymakers of the city can reasonably be said to have been *deliberately indifferent* to the

need") (emphasis added).

In this case, both New Jersey statutes and the Borough's own Police Manual

establish that the Chief of Police was the relevant policymaker.  See N.J. Stat. Ann. §

40A:14-118 (where position of Chief of Police is established, this position "shall be the

head of the police force and ... shall be directly responsible to the appropriate [municipal

governing] authority for the efficiency and routine day-to-day operations thereof"); Police

Manual 5:1.1-1.2, 6.1, 6.1.4 (noting that Chief of Police is highest ranking officer, that

"command shall be exercised by the virtue of rank" and that the Chief shall have "complete

authority over all police personnel functions and operations" and shall "set[] the

administrative policies of the department").  Although it is clear that there was a series of

robberies by police officers in years prior to 1993, the year the Hernandez burglary took

7

place, the District Court concluded that the robberies were not municipal custom because appellant introduced no evidence suggesting that the Chief of Police knew or should have known that his officers were robbing citizens.

Appellant first argues that the existence of a widespread pattern of prior robberies was enough for a reasonable fact-finder to conclude that the policymaker should have known about the constitutional violations. A reasonable fact-finder may conclude that a Police Chief has constructive knowledge of constitutional violations where they are repeatedly reported in writing to the Police Department. See Beck, 89 F.3d at 973 (the existence of repeated written citizen complaints about abuse of force by a police officer would be enough to support a conclusion that the policymaker knew or should have known of the violations). In addition, "constructive knowledge may be evidenced by the fact that the practices have been so widespread or flagrant that in the proper exercise of [their] official responsibilities the [municipal policymakers] should have known of them." Bordanaro v. McLeod, 871 F.2d 1151 (1st Cir. 1989) (quoting Spell v. McDaniel, 824 F.2d 1380, 1387 (4th Cir. 1987)). Unlike Beck, where written complaints clearly alleged that a police officer was acting unconstitutionally, or Bordanaro, where officers made no attempt to hide the fact that they would regularly break doors down without warrants, the mere existence of past robberies in the Borough is insufficient to establish that the Police Chief had constructive knowledge that the robberies were being committed by police officers.

Appellant next points to several pieces of evidence that the District Court did not consider which she argues support the existence of an unconstitutional custom. She notes

8

that in 1992, an alarm company orally suggested to Lt. Giannantonio that a police officer may have committed the burglary of a restaurant. However, this is insufficient for a reasonable jury to conclude that a policymaker knew or should have known about the constitutional violations. It was a single incident, it was conveyed orally, and Giannantonio promised Anderson that he would not tell anyone else about it. There is also no evidence that this information ever reached the Police Chief. Appellant also observes that her husband told an officer that he thought Anderson was responsible for the burglary of appellant's home. But since this happened after the burglary had taken place, it cannot demonstrate prior knowledge and deliberate indifference by the Police Chief. See Beers-Capitol v. Whetzel, 256 F.3d 120, 137 (3d Cir. 2001) (requiring plaintiff in a § 1983 action to demonstrate "that the defendant knew of the risk to the plaintiff *before* the plaintiff's injury occurred").

Appellant also argues that in 1992 there were rumors circulating within the Police Department that Anderson and Sgt. Edward Shirley were committing burglaries. There is no evidence, however, that the Police Chief heard these rumors. As we observed in Johnson v. Elk Lake School District, 283 F.3d 138, 144 n. 1 (3d Cir. 2002), until the rumors are brought to the attention of a policymaker, they cannot constitute evidence that a policymaker knew or should have known of the violations. Cf. also Beers-Capitol, 256 F.3d at 140 (Section 1983 claims against individual employees for 8th Amendment violation based on sexual abuse of youth inmates).

In Johnson, this Court declared that summary judgment was properly granted to the

9

defendant school district on plaintiff's Section 1983 claim for sexual abuse by a school

counselor because

> Johnson presented no evidence that [the rumors] were ever brought to the attention of a supervisory or policymaking official.  Moreover even if school officials had been made aware of these stories . . . we share the District Court's reluctance "to impose on the district an obligation to treat as true, all rumors, until proven otherwise."  In the absence of any direct complaints made to school officials, the mere floating around of unsubstantiated rumors regarding a particular employee–particularly in the high school setting which is notoriously rife with adolescent gossip – does not constitute the kind of notice for which a school district can be held liable.

283 F.3d at 144 n.1.  Similarly, in Beers-Capitol, this court affirmed the grant of summary

judgment for a supervisor, despite the fact that he had heard rumors of sexual abuse among

the inmates at the youth detention facility, because "there [was] no evidence that [the

supervisor] believed these allegations were likely to be true or that the evidence

surrounding the allegations was so strong that he must have believed them likely to be true."

256 F.3d at 140.

Appellant's case is slightly stronger than Johnson or Beers-Capitol because a police

station does not have the same potential for unsubstantiated gossip as a high school or

youth detention center, and the requirement in Beers-Capitol that the individual must

subjectively believe the rumor only applies in the context of Eighth Amendment violations.

See Farmer v. Brennan, 511 U.S. 825, 834 (1994) (requiring subjective knowledge by

prison official to make out an Eighth Amendment violation).  Nonetheless, while it might

be proper to attribute to a policymaker constructive knowledge of repeated written citizen

complaints, rumors are too insubstantial to deserve similar treatment.  As in Johnson, the

10

existence of rumors cannot be enough to infer knowledge on the part of the Police Chief in the absence of any evidence that those rumors were brought to his attention.  Therefore, even viewing this evidence in the light most favorable to the appellant, it is insufficient for a reasonable jury to conclude that the Police Chief knew or should have known that his officers were committing constitutional violations by robbing citizens. Accordingly, the Police Chief's failure to investigate these rumors in 1992 and take action against the offending officers did not constitute deliberate indifference to a known risk of constitutional violations.

Neither can appellant prevail on her theory that the Borough had a custom of deliberate indifference through failure to train or inadequate supervision.   Appellant analogizes to Berg, 219 F.3d 261, and Powpow v. City of Margate, 476 F. Supp. 1237 (D. N.J. 1979), to suggest that this is an instance where a violation of a constitutional right is so likely to result from a failure to train or supervise, especially in light of the high degree of nepotism within the Department, that it rises to the level of deliberate indifference. Berg involved the issuance of warrants by typing a number into a computer database, and the court recognized that because merely typing one digit incorrectly would result in the issuance of a warrant for the wrong individual, the potential for constitutional violations was obvious.  Here, it was hardly obvious that police officers, sworn to uphold the law, would burglarize the homes of the very citizens whom they were duty-bound to protect because they lacked training that instructed them that such activity was unlawful.

Powpow, upon which appellant also relies, is also inapposite.  It involved the death

11

of an innocent bystander based on the police officer's reckless use of his weapon.  Based on the high risk that individuals might be injured by improper use of weapons, the District Court held that there was an obvious constitutional risk arising from failing to sufficiently train officers in the use of service weapons in residential areas.   Here, there is nothing to suggest that there is an inherently high risk that police officers will commit robberies absent ethics training.  Thus, the failure to train police officers that they should not commit burglaries, or the failure to supervise them to ensure that they do not commit such felonies, is not so likely to result in a violation of a constitutional right as to demonstrate deliberate indifference by Borough policymakers.

## VI.    CONCLUSION

The order of the District Court should be affirmed.

/s/ D. Brooks Smith
Circuit Judge