**Elsie STANDRIDGE, Individually, and as Administratrix of the Estate of Patrick Standridge, Deceased, and as Next Friend of Infants, Sean Patrick Standridge and Shannon Lee Standridge, Plaintiffs,**

v.

**The CITY OF SEASIDE, a Municipal Corporation, Anthony Aiello, L. V. Hernandez, and Ronald Guth, Individually and as Police Officers, Employees and Agents of the City of Seaside, and Does I through XX, inclusive, Defendants.**

**No. C–81–3800 SAW.**

United States District Court,
N. D. California.

Aug. 26, 1982.

Patrick M. Ford, Rodney J. Shepherd, Carmel Valley, Cal., for plaintiffs.

Martin T. Reilley, Harray, Rosecrans & Reilley, Monterey, Cal., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

WEIGEL, District Judge.

Plaintiffs sue the City of Seaside and three individual police officers to recover

damages for the death of Patrick Standridge (decedent). Plaintiffs are Elsie Standridge, decedent's wife and the administratrix of decedent's estate, and Sean Patrick and Shannon Lee Standridge, decedent's children. The decedent was shot and killed by defendant police officers in the early morning of April 22, 1981, during a shoot-out started by the decedent. Plaintiffs allege three causes of action: (1) violation of the Civil Rights Act, 42 U.S.C. §§ 1983, 1988, (2) negligence, and (3) loss of consortium. The matter is before the Court on defendants' motion to dismiss and/or for summary judgment. Because matters outside the pleading were presented to and considered by the Court, the motion is treated as one for summary judgment. (Fed.R.Civ.P. 12(b).)

There is no significant dispute as to the facts. On the evening of April 21, 1981, the bartender of the Dunes Bar in Seaside, California, James Coulder, reported to defendant police officer Anthony Aiello that a patron—the decedent's father-in-law—was complaining of a missing wallet. Mr. Coulder stated that he suspected John Watson, who earlier had been in the bar, of taking the wallet. Officer Aiello issued a "Be On Lookout" for Mr. Watson. Sometime later, in the early morning of April 22, 1981, officer Aiello and his partner, defendant police officer Ronald Guth, were flagged down by a male complaining that he had been struck by Mr. Coulder and accused of taking a wallet. Defendant police officer L. V. Hernandez arrived on the scene and identified the male as Mr. Watson. Mr. Watson was questioned about the wallet. He denied any knowledge of or participation in any theft, stated that he did not want to press charges against Mr. Coulder, but that he did want to return to the Dunes Bar to pick up the hat he had left there. Defendant officers did not detain him.

As Mr. Watson was walking towards the Dunes Bar, the decedent ran upon the scene and fired a shot at Mr. Watson, wounding him in the leg. Officer Aiello then ran towards the scene of the shooting. As to what next transpired, the parties are in dispute. The defendant officers contend, and testified at their depositions to the effect that, they identified themselves as police officers and ordered the decedent to drop his gun. Plaintiffs contend that defendant officers failed to so identify themselves. (Because this fact is immaterial to plaintiffs' contentions, it does not preclude the Court's ruling on the motion for summary judgment.) The decedent fired another shot at Mr. Watson, who had fallen wounded to the ground. Officer Aiello fired two shots at the decedent, who then turned and fired at Officer Aiello. Both men ran for cover. Officer Aiello fired one more shot towards the decedent. The decedent continued to exchange fire with Officer Hernandez. The decedent died as a result of wounds inflicted during the shoot-out.

At the hearing of this motion on July 22, 1982, plaintiffs' counsel stipulated that their claim of violation of the Civil Rights Act is predicated only upon the following contentions:

[that Officers Aiello, Guth, and Hernandez were deliberately indifferent towards decedent by allowing and encouraging Mr. Watson to return to the Dunes Bar] knowing: (1) that he was a person of violent character; (2) that he was a suspect of a wallet theft at The Dunes Bar which had occurred within a few hours; (3) that he had just been in a fight with the bartender at The Dunes Bar; and (4) that in all probability a fight would ensue upon his return. All of the above acts and misconduct resulted in the death of decedent Patrick Standridge by gunshots fired by defendant Officers.

Plaintiffs' Answer to defendants' interrogatory 1, Set Two, June 9, 1982.

Defendants move to dismiss and/or for summary judgment on plaintiffs' first cause of action on the grounds that (1) plaintiffs fail to state a cause of action under 42 U.S.C. § 1983, (2) defendant officers are qualifiedly immune from civil liability under Section 1983, (3) defendant officers had no authority to arrest or detain or other-

wise direct the conduct of Mr. Watson, and (4) the alleged misconduct of defendant officers was not the proximate cause of the decedent's death. Defendant City of Seaside moves to dismiss and/or for summary judgment for the additional reason that it cannot be liable for civil rights violations under the doctrine of *respondeat superior.* Defendants also move to dismiss and/or for summary judgment on plaintiffs' second and third causes of action on the ground that they are immune from liability under California Government Code §§ 845 and 846.

■ In order to state a cause of action under Section 1983, plaintiffs must allege (1) that defendants deprived decedent of a federal right and (2) that defendants acted under color of state law. *See Monroe v. Pape,* 365 U.S. 167, 171, 81 S.Ct. 473, 475, 5 L.Ed.2d 492 (1961); *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1924, 64 L.Ed.2d 572 (1980). It is beyond dispute that one killed by a state police officer is deprived of his Fourteenth Amendment right to life. *E.g., Screws v. United States,* 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945); *Mairoana v. MacDonald,* 596 F.2d 1072 (1st Cir. 1979). In the case at bar, it is undisputed that defendant officers were acting under color of state law. Thus, plaintiffs have stated a cause of action under 1983.

■ Defendants urge that they cannot be liable under Section 1983 because, as local law enforcement officers, they have a qualified immunity in civil actions where they acted with a good faith belief based upon reasonable grounds that the measures they took were necessary.[1] *See Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978); *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). Because the Court finds that there is no genuine issue of material fact as to the availability of the qualified immunity defense to defendants in this case, the Court grants defendants' motion for summary judgment.

■ Until recently, the qualified immunity defense required the establishment of both objective and subjective good faith. *Wood v. Strickland,* 420 U.S. 308, 320, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). "The objective element involves a presumptive knowledge of and respect for 'basic, unquestioned constitutional rights.' [Citation omitted.] The subjective component refers to 'permissible intentions.'" *Harlow, et al. v. Fitzgerald,* —— U.S. ——, ——, 102 S.Ct. 2727, 2737, 73 L.Ed.2d 396 (1982). Concluding, however, that "[t]he subjective element of the good faith defense frequently has proved incompatible with [the] admonition in *Butz* that insubstantial claims should not proceed to trial," the Supreme Court has eliminated the subjective component. *Id.* It is now the rule that ". . . government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

---

1. Qualified or "good faith" immunity is an affirmative defense that normally must be pleaded by a defendant. *See Gomez v. Toledo, supra,* 446 U.S. at 640, 100 S.Ct. at 1924; *Harlow, et al. v. Fitzgerald,* —— U.S. ——, ——, 102 S.Ct. 2727, 2737, 73 L.Ed.2d 396 (1982). In this case, however, defendants did not plead the defense in their answer, but raised it by this motion. Affirmative defenses, even though not appearing on the face of the complaint, may be established upon a motion to dismiss or for summary judgment when, by affidavits, depositions, and admissions, a set of undisputed facts is revealed upon which the moving party is entitled to judgment as a matter of law. *Suckow Borax Mines Consol., Inc. v. Borax Consol., Ltd.,* 185 F.2d 196, 205 (9th Cir.), *cert. denied,* 340 U.S. 943, 71 S.Ct. 506, 95 L.Ed. 680 (1950). *See also* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1277 (1969) and cases cited therein. This is in harmony with the spirit of the Federal Rules liberally to permit amendment of pleadings, including the addition of a defense, at almost any stage in the proceedings. *See* Fed.R.Civ.P. 15; *Greenwald v. Cunard S. S. Co.,* 162 F.Supp. 250 (S.D.N.Y. 1958); 5 C. Wright & A. Miller, *supra* at §§ 1488 and 1278. Because plaintiffs have knowingly acquiesced in the introduction of evidence relating to the qualified immunity defense, they will not be prejudiced by the Court's consideration of the issue on this motion.

reasonable person would have known." *Id.* at ——, 102 S.Ct. at 2738. As described in *Scheuer v. Rhodes, supra,* 416 U.S. at 247–48, 94 S.Ct. at 1692, "[i]t is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, ... that affords a basis for qualified immunity ..."

In addressing the good faith of defendant officers, the Court bears in mind that "police officers ... must often act swiftly and firmly at the risk that action deferred will be futile or constitute virtual abdication of office." *Scheuer v. Rhodes, supra,* 416 U.S. at 246, 94 S.Ct. at 1691. The Court also recognizes that an officer's duty may sometimes entail the use of deadly force and that liability under Section 1983 will not arise if the officers involved reasonably believed that such force was necessary to protect themselves or others from death or great bodily harm. *See, e.g., Maiorana v. MacDonald,* 596 F.2d 1072 (1st Cir. 1979); *Clark v. Ziedonis,* 513 F.2d 79, 81 (7th Cir. 1975); *Willis v. Tillrock,* 421 F.Supp. 368, 370–72 (N.D.Ill.1976).

The material facts in this case which are undisputed lead inexorably to the conclusion that the defendant officers acted reasonably to protect Mr. Watson and themselves. It was the decedent who fired the first shots. Apparently to "avenge" his father-in-law's stolen wallet, the decedent came to the scene wielding a gun and, spotting the man he suspected of the theft, shot him. Mr. Watson fell to the ground and decedent, standing almost directly over him, fired a second shot at him. In order to protect Mr. Watson from imminent death, Officer Aiello fired two shots at decedent, who then turned and fired at Officer Aiello. It is clear from these facts that the defendant officers acted out of a sense of duty and in good faith to protect the life of Mr. Watson. It is also clear that they had reasonable grounds for so acting.

Plaintiffs urge, however, that the qualified immunity defense is not available to defendants because they knew or should have known that Mr. Watson was a violent person, suspected of a wallet theft, and that

in all probability a fight would ensue upon his return to the Dunes Bar. They claim that it was unreasonable for the officers to permit Mr. Watson to return to the bar.

Plaintiffs' claim merits little discussion. Defendant officers had no authority to arrest or detain Mr. Watson. *See* California Penal Code § 836. They had not witnessed Mr. Watson commit a misdemeanor, nor had they reasonable cause to believe that Mr. Watson had committed a felony. No one saw Mr. Watson take the wallet, and in response to police questioning, Mr. Watson denied any knowledge of the theft. It is simply incredible for plaintiffs to claim that the officers' failure to detain Mr. Watson was the proximate cause of the decedent's death. It was the decedent himself who caused the exchange of gun fire resulting in his death.

Because the Court finds no constitutional violation by the defendant officers, there are no grounds for establishing liability against defendant City of Seaside. In order to establish liability against the City, plaintiffs must show either (1) an official policy or custom which results in constitutional violations or (2) conduct by officials in authority evincing implicit authorization or approval or acquiescence in the unconstitutional conduct. *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). Thus, municipal liability under Section 1983 cannot be established where no constitutional violations are found to have occurred.

Plaintiffs' second and third causes of action are state actions brought under the Court's pendent jurisdiction. Because the federal claim is hereby disposed of on defendants' motion for summary judgment, the state claims should be dismissed, as well. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Thus, the Court need not address defendants' claims of state immunity under California Government Code §§ 845 and 846.

Based on the foregoing findings of fact and conclusions of law,

IT IS HEREBY ORDERED that defendants' motion for summary judgment is granted.