Michael KILLARNEY, Plaintiff,

v.

John LAPERLA and Michael
Cassidy, Defendants.

No. 79 Civ. 3062.

United States District Court,
E.D. New York.

March 18, 1983.

Herman & Natale, Garden City, N.Y., for
plaintiff.

Asst. U.S. Atty. Wentworth E. Miller,
E.D.N.Y., Brooklyn, N.Y., for defendants.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

This action arises out of an alleged violation of plaintiff's fourth amendment rights[1] and is based upon the Supreme Court's decision in *Bivens v. Six Unknown Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) which established a cause of action for an aggrieved person to sue for civil damages based on

---

1. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Const.Amend. IV.

unconstitutional conduct of federal officials. Plaintiff, a postal employee, maintains that defendants, United States postal inspectors, arrested him without a warrant and without probable cause.

Defendants Laperla and Cassidy now move for summary judgment pursuant to Fed.R.Civ.P. 56. In support of their motion, defendants maintain that pursuant to the recent Supreme Court case of *Harlow v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), they are entitled to official immunity from the instant suit and, therefore, are entitled to judgment as a matter of law. Plaintiff, however, disputes defendants' claim to official immunity and contends that there are material issues of fact concerning defendants' liability to plaintiff. Because I conclude that defendants are entitled to the official immunity created in *Harlow* and because there are no material issues of fact present, defendants' motion for summary judgment is granted.

*Discussion*

██ On a motion for summary judgment, the role of the Court is to determine whether there are issues of fact to be tried. *Heyman v. Commerce and Industry Company,* 524 F.2d 1317, 1319–20 (2d Cir.1975). The burden is on the moving party to establish that there exists no dispute as to the evidentiary facts, and there must also be no issue as to the inferences to be drawn from them. *Schwabenbauer v. Board of Education of the City School District of the City of Olean,* 667 F.2d 305, 313 (2d Cir.1981). The Court must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought. *United States v. Matheson,* 532 F.2d 809 (2d Cir.), *cert. denied,* 429 U.S. 823, 97 S.Ct. 75, 50 L.Ed.2d 85 (1976); *Heyman, supra* at 1320.

The use of a summary judgment procedure, therefore, is to expedite the determination of actions in which no genuine issue of fact has been raised. Since its impact is drastic in that it cuts off a party's right to present its case to the trier of fact, it may be granted only with extreme caution.

In this case, the threshold issues are whether the defendants enjoy immunity from suit and if they do, whether there is a genuine issue of fact which would adversely affect that immunity.

*Official Immunity*

Defendants maintain that they are protected by the immunity for government officials established by the Supreme Court in *Harlow v. Fitzgerald, supra.* In that case, the Court held that government officials are immune from personal liability for unconstitutional conduct insofar as their conduct was objectively reasonable as measured by reference to clearly established law.

In granting federal officials immunity the Supreme Court attempted to balance two competing interests. On the one hand, in situations where federal officials have used their positions and authority to inflict personal damage, the Court has been concerned with fashioning a constitutional remedy, an action for damages. *See Bivens v. Six Unknown Narcotics Agents,* 403 U.S. 388, 401, 91 S.Ct. 1999, 2007, 29 L.Ed.2d 619 (1971).[2] On the other hand, in performing their duties, officials should not be distracted by the threat of insubstantial suits. *Harlow, supra,* —— U.S. ——, 102 S.Ct. at 2736–7, *citing Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir.1949), *cert. denied,* 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950); *Butz v. Economou,* 438 U.S. 478, 515–16, 98 S.Ct. 2894, 2915–16, 57 L.Ed.2d 895 (1978);[3] *Wood v. Strickland,* 420 U.S. 308, 317–18, 95 S.Ct. 992, 998–99, 43 L.Ed.2d 214 (1975). The Court in *Harlow* concluded that the qualified immunity standard, as stated above, applied in conjunction with the procedures for summary judgment, would protect government officials from unwarranted litigation as well as liability. *See Har-*

---

**2.** The case involved Agents of the Federal Bureau of Narcotics.

**3.** In *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), the Supreme Court held that the scope of official immunities in *Bivens* actions is the same as that accorded state officials in § 1983 actions. *Id.* at 500, 98 S.Ct. at 2907.

*low, supra,* —— U.S. ——, 102 S.Ct. at 2737; *Butz, supra,* 438 U.S. at 508, 98 S.Ct. at 2911–12.

Prior to *Harlow,* the established standard for qualified or "good faith" immunity was two-pronged, bifurcating the concept of good faith on the part of the officers into an objective and subjective component. Under the objective branch a plaintiff could defeat the official's claim of good faith by showing that the official acted in disregard of a constitutional right when the actor knew or should have known that his conduct violated such a right.[4] *See Procunier v. Navarette,* 434 U.S. 555, 562, 98 S.Ct. 855, 859–60, 55 L.Ed.2d 24 (1978); *O'Connor v. Donaldson,* 422 U.S. 563, 577, 95 S.Ct. 2486, 2494–95, 45 L.Ed.2d 396 (1975); *Wood, supra,* 420 U.S. at 322, 95 S.Ct. at 1001.

Noting that many courts have regarded the subjective element of the good faith defense as creating a question of fact, thus precluding summary judgment and resulting in burdensome and distracting litigation, *Harlow, supra,* —— U.S. ——, 102 S.Ct. at 2737–38, 2738 n. 29, the Supreme Court reformulated the qualified immunity standard and omitted the subjective component. Instead, the Court held, that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* —— U.S. ——, 102 S.Ct. at 2738. Although *Harlow* dealt with high governmental officials, the Court made clear that any federal official exercising discretion would be accorded similar immunity. Therefore, the postal inspectors' conduct at issue in this case must be measured by the objective standard set forth in *Harlow. See Saldana v. Garza,* 684 F.2d 1159, 1163 n. 15 (5th Cir.1982) (police officers); *Crowder v. Lash,* 687 F.2d 996, 1007 (7th Cir.1982) (City of Seaside and state prison officials); *Standridge v. City of Seaside,*

545 F.Supp. 1195, 1198–99 (N.D.Ca.1982) (police officers); *Visser v. Magnarelli,* 542 F.Supp. 1331, 1337 (N.D.N.Y.1982) (members of Syracuse Common Council). The material facts in this case which are undisputed lead to the conclusion that the defendants acted reasonably in arresting Mr. Killarney.

Plaintiff had two years of college education and was employed by the United States Postal Service in Flushing, Queens, as a distribution clerk machine operator between March 1, 1975 and December 6, 1978. On October 5, 1978, while plaintiff was working at his job, he injured his knee. Plaintiff filled out an accident report and was taken to the hospital where he was treated and released with advice to see his personal physician as soon as possible. The hospital advised Mr. Killarney that he should not return to work.

On October 6, 1978, plaintiff saw Dr. Gustavo Cardenas, who advised plaintiff that he was physically disabled and could not return to work. Dr. Cardenas referred plaintiff to Dr. Lipton. In Dr. Lipton's opinion plaintiff had sustained an internal derangement of his left knee. Further examination of plaintiff's progress and condition was set for November 15, 1978. Meanwhile, Dr. Lipton advised plaintiff not to return to work.

On November 15, 1978, plaintiff appeared at Dr. Lipton's office. However, Dr. Lipton was called to the hospital because of an emergency and did not re-examine Mr. Killarney. He did state the plaintiff was not, at that time, fit to return to work. Another appointment was scheduled for November 20, 1978, at which time Dr. Lipton certified that plaintiff could return to work.

Plaintiff resumed working on November 21st, after forty-six days of disability leave. He had received full pay during that period.

On November 29, 1978, plaintiff was questioned by two postal inspectors, defendants Laperla and Cassidy, about his injury and absence from work. Plaintiff worked

---

**4.** "A police officer is not charged with predicting the future course of constitutional law." *Pierson v. Ray,* 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288 (1967); *Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975).

the night shift, from 9:30 P.M. to 6:00 A.M., and he was interviewed from approximately 5:00 A.M. to 7:00 A.M., during which time he signed a handwritten statement swearing, *inter alia,* that on November 10, 1978, the supposed date of a scheduled doctor's appointment, he "felt O.K. and could return to regular work at the post office," but he "decided to abuse or take advantage of the COP (continuation of pay) status for the full 45 days, . . . " Government's Exhibit B.

On the basis of this statement, the inspectors arrested plaintiff[5] on November 30, 1978 for having made a fraudulent claim against the United States in violation of 18 U.S.C. § 1003.[6] Two days later, plaintiff was discharged from his job at the postal service.[7] Criminal charges against Mr. Killarney were subsequently dismissed. Plaintiff maintains that the postal inspectors arrested him without probable cause in violation of the fourth amendment.

█ The test established to measure probable cause as required by the fourth amendment in support of an arrest is whether the facts and circumstances were sufficient to warrant a prudent person to believe that the person arrested was committing or had committed an offense. *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). There is no technical definition of probable cause, however, and each case must be decided according to its own facts and circumstances. *Go-Bart Importing Co. v. United States,* 282 U.S. 344, 357, 51 S.Ct. 153, 158, 75 L.Ed. 374 (1931).

Apparently, Mr. Killarney's leave period coincided with the forty-five day absence from work of his next door neighbor, Robert Hollander. Since the two men worked the same shift, and they car-pooled together, the postal inspectors were suspicious of the validity of plaintiff's claim of disability. Furthermore, it appeared that Hollander and plaintiff experienced similar accidents and that another neighbor was a witness to the accident. Government's Brief pp. 3–5. With this background in mind, defendants interrogated plaintiff and plaintiff subsequently signed the confession that led to his arrest.

█ The Court finds that in light of the circumstances known to defendants, plaintiff's confession to overstaying his continuation of pay status was reasonably trustworthy and sufficient to warrant defendants' belief that plaintiff had committed a crime. *See Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949). Plaintiff does not offer any evidence to support his assertion that the confession was the result of coercion, confusion or exhaustion. In fact, plaintiff admits that he was not coerced into signing the confession and that he read and fully understood what he was signing. Killarney Dep. pp. 16–20. Therefore, the Court concludes that defendants' action in arresting plaintiff did not "violate clearly established

---

**5.** 18 U.S.C. § 3061 authorizes postal inspectors to make arrests without warrants. The statute provides in relevant part:

§ 3061. Powers of postal inspectors.

(a) Subject to subsection (b) of this section, postal inspectors may, to the extent authorized by the Postmaster General—

\* \* \* \* \* \*

(3) make arrests without warrant for felonies cognizable under the laws of the United States if they have reasonable grounds to believe that the person to be arrested has committed or is committing such a felony.

**6.** The offense with which plaintiff was charged states:

Whoever knowingly and fraudulently demands or endeavors to obtain any share or sum in the public stocks of the United States, or to have any part thereof transferred, as-

signed, sold or conveyed, or to have any annuity, dividend, pension, wages, gratuity, or other debt due from the United States, or any part thereof, received, or paid by virtue of any false, forged, or counterfeited power of attorney, authority, or instrument, shall be fined not more than $10,000 or imprisoned not more than five years, or both; but if the sum or value so obtained or attempted to be obtained does not exceed $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.

**7.** After oral argument on October 8, 1982, plaintiff's cross motion for an order precluding defendants from offering any evidence or testimony, in this case, regarding the reasonableness of their conduct was denied for the reasons stated on the record.

statutory or constitutional rights of which a reasonable person would have known." *Harlow, supra.* Since plaintiff has not come forward with specific facts to dispute the reasonableness of defendants' conduct, defendants are immune from civil liability for their actions in this case. Defendants' motion for summary judgment is granted.

SO ORDERED.