Mildred B. KING, Administratrix of the Estate of John L. Walsh, Jr., Plaintiff,

v.

Thomas R. WARE, an individual, and The City of Pittsburgh, a municipal corporation, Defendants.

Civ. A. No. 79-334.

United States District Court, W. D. Pennsylvania.

Oct. 6, 1981.

Robert X. Medonis, Pittsburgh, Pa., for plaintiff.

Marvin Fein, First Asst. City Sol., Michael A. Donadee, Pittsburgh, Pa., for defendants.

## MEMORANDUM OPINION

DIAMOND, District Judge.

The plaintiff brought this action to recover damages for the fatal shooting of John L. Walsh, Jr., by defendant, Thomas R. Ware. The complaint alleges that Ware was acting under color of state law and pursuant to the custom and/or official policy of the police department of the defendant City in violation of Walsh's civil rights under 42 U.S.C. § 1983[1] when the fatal shooting occurred.

Presently before the court are motions for summary judgment filed by the City and Ware asserting that there is no genuine issue as to any material fact and that each is entitled to judgment as a matter of law. For the reasons set forth below, the motion of the City will be granted and the motion of Ware will be denied.

## BACKGROUND

The material facts as to which there is no genuine issue which give rise to this action, viewed favorably to the non-moving plaintiff, are as follows.

In the early morning hours of August 31, 1978, the decedent and several others, all of the white race, were passengers in an automobile driven by one Don Medgus, also white. They were driving through the so-called Hill District of the City of Pittsburgh and were proceeding on Wylie Avenue toward the downtown area. At approximately 2:00 a. m. they stopped at a car parked along Wylie Avenue to ask the occupant, the defendant Thomas R. Ware, for directions. Ware, an acting sergeant of the City of Pittsburgh police, had gone to the Wylie Avenue area when he went off duty sometime after 5:00 p. m. the previous evening.

As decedent's auto pulled along side Ware's car, someone in the Walsh vehicle asked where beer could be purchased. Ware said something to the effect "What are you doing up here in the Hill District; what are you whities doing up here." He then drew a gun and fired one shot which struck Walsh in the head, causing his death.

At no time during the incident in question did Ware identify himself as a city policeman. He was not on duty although he was on twenty-four hour supervisory call. He was not in uniform and did not display a badge, but he was not required to be in a uniform even when on duty. The service revolver from which he fired the fatal shot was issued to him by the City. The vehicle which he occupied, although unmarked, was owned by the City, however, he did not have to sign for the car or give an account for mileage or use. When he confronted Walsh and his companions, Ware's appearance was not that of a police officer but rather of a private citizen, and it was not until after the shooting that decedent's companions learned of Ware's occupation.

The plaintiff claims that these facts give rise to a cause of action under 42 U.S.C. § 1983 against both the City and Ware. She asserts that the City had promoted Ware to acting sergeant through a process

1. "Every person who under color of any statute, ordinance, regulation, custom or usage of any state or territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

which had no objective selection criteria, which provided for no training, and which involved no active supervision. In addition, she claims that the City had an official policy of keeping white citizens out of the Hill District after dark and that Ware was implementing this policy when Walsh was shot. The plaintiff further asserts that Ware was acting under color of law when the fatal shooting occurred, because he was clothed with the official authority of the state.

## DISCUSSION

### A. *The Motion of the City*

In considering the City's motion for summary judgment, we look to the case of *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In *Monell*, it was held that a municipal governmental entity cannot be held responsible on the basis of respondeat superior under § 1983 solely because it employs a tortfeasor. It is only where the injury complained of results from the implementation or execution of the policy or custom of the governmental body that it is subject to § 1983 liability. *Id.*

In the present case, the plaintiff asserts two theories of an official policy or custom of the City of Pittsburgh as foundation for her claim of municipal liability for the death of Walsh. First, she claims that the City was negligent in promoting, training and supervising Ware. Under this theory, municipal liability is not based upon respondeat superior. Instead, the City, as a municipal body, is allegedly "directly" liable under § 1983. The plaintiff asserts that since a municipality can only act directly through its supervisory officials the negligent execution of the responsibilities of those officials constitutes an official custom or *de facto* policy actionable under § 1983. *See Popow v. City of Margate*, 476 F.Supp. 1237, 1246–1247 (D.N.J.1979); *see also, Bell v. City of Philadelphia*, 511 F.Supp. 1156 (E.D.Pa.1981).

The questions of whether a municipal governmental entity can be directly liable under § 1983 for negligent supervision and the degree of negligence sufficient to establish such liability have been considered by several federal courts with varying results. *See Leite v. City of Providence*, 463 F.Supp. 585, 589 n. 3 (D.R.I.1978). To date, the United States Supreme Court has not resolved the question of whether negligence can be a predicate for such § 1983 liability. *See Parrett v. Taylor*, —— U.S. ——, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Procunier v. Navarette*, 434 U.S. 555, 566 n. 14, 98 S.Ct. 855, 862 n. 14, 55 L.Ed.2d 24 (1978). However, the Third Circuit has held that an allegation of simple negligence is insufficient to support a § 1983 claim. *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3rd Cir. 1970); *see also, Jones v. McElroy*, 429 F.Supp. 848, 861 (E.D.Pa.1977).

It is clear, however, that even if § 1983 affords a remedy for negligent deprivation of constitutional rights, said negligence must be causally related to the harm suffered by the complaining plaintiff. *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). Moreover, mere inaction or oversight on the part of municipal officials is insufficient to establish direct liability under § 1983. There must be an affirmative link between the misconduct complained of and the adoption of a plan or policy by the municipality, express or otherwise, showing authorization or approval of or deliberate indifference to such misconduct. *Id.* at 371, 96 S.Ct. at 604; *Leite* 463 F.Supp. at 590; *Popow* 476 F.Supp. at 1245.

In the case *sub judice*, although there is a factual question as to whether the City was negligent in promoting, training and supervising Ware, there is no factual dispute as to the absence of the required nexus between the City's alleged negligence and the misconduct complained of. The plaintiff has not offered, nor do we find, any basis for proof that there was any causal relationship between the alleged negligent supervision of Ware by the City and the shooting of Walsh. The facts in the case undisputedly reveal that the spontaneous and independent misconduct of Ware while he was off duty was not affirm-

atively linked to the policy or custom of the City. The naked allegation that the City failed adequately to train, promote or supervise Ware is insufficient as a matter of law, since there is no foundation for the required showing that the City authorized, approved or was indifferent to Ware's tortious action. For this reason, the plaintiff's theory of direct municipal liability under § 1983 must fail.

The second basis for municipal liability offered by the plaintiff is that there exists an official policy of the City of Pittsburgh police department to keep white citizens out of the Hill District after dark and that Ware was executing this policy when the fatal shooting occurred.

The City admits that it is City policy to keep white people from frequenting the predominantly black, Hill District area after dark.[2] This is for the safety of the white citizens.[3] However, the policy is not directed toward whites who simply are driving through the area. Instead, the purpose is to escort safely out of the area those individuals who may be walking, loitering or circling by automobile.[4]

Although City officials admit that an individual who refused to be escorted out might be subject to arrest [5], the practice, to the extent that it exists, is to encourage white citizens to move on of their own accord and for their own well-being. There was no city policy of shooting those who refused to comply and there certainly was no policy to shoot white citizens merely because they were in the area.

■ While the misexecution of a constitutional municipal policy by an employee may be considered as a basis for the individual liability of the employee, it is not the basis for municipal liability under § 1983. *Dominguez v. Beame*, 603 F.2d 337, 342 (2d Cir. 1979), *cert. denied*, 446 U.S. 917, 100 S.Ct. 1850, 64 L.Ed.2d 271 (1980). Rather, the plaintiff must show that the policy or custom itself was unconstitutional and that the execution of this unconstitutional official policy or custom caused the harm. *Monell*, 436 U.S. at 691, 98 S.Ct. at 2036; *Rizzo*, 423 U.S. at 370–71, 96 S.Ct. at 603–04.

■ We find as a matter of law based on the undisputed acts above that there is no nexus between the practice of keeping white citizens out of the Hill District and the shooting of the decedent.

The decedent, Walsh, and his companions were not the intended targets of the City's practice. They were not walking or loitering in the area. There has been no suggestion that they were circling the area. It appears, simply, that they were driving through the area. As such, they were clearly outside of the scope of the City's policy.

Additionally, the purpose of the policy was to protect white citizens. The practice of escorting them out of the area was to insure their safety. The defendant Ware took no action to safeguard the decedent and his companions. There was no motive to protect them. Ware was not executing or even misexecuting a City policy, on the contrary, he was purposefully engaging in tortious conduct of his own design for his own purposes whatever they may have been.

Because the link between the official policy cited by the plaintiff and the harm occasioned is so attenuated, we find that this case falls squarely within the rule of *Monell*. Since the death of Walsh reasonably cannot be said to flow from the City's policy of keeping white citizens out of the Hill District, the only basis for imputing to the City responsibility for Ware's misconduct is respondeat superior. *Monell* expressly prohibits municipal liability under § 1983 on that theory of liability.

B. *The Motion of Ware*

■ In order to establish Ware's liability under § 1983, the plaintiff must show that

**2.** Deposition of William H. Moore, Assistant Superintendent of Police, City of Pittsburgh, p. 6.

**3.** *Id.*

**4.** *Id.*, Moore's Deposition at p. 9.

**5.** *Id.*, Moore's Deposition at p. 8.

he has been deprived of a constitutional right and that such deprivation was caused by Ware acting under color of law. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970); *Basista v. Weir*, 340 F.2d 74, 79 (3rd Cir. 1965).

In the present case, the first requirement is clearly met. The shooting of the decedent by Ware constituted a denial without due process of the right to life as explicitly guaranteed by the Fourteenth Amendment. *See Popow*, 476 F.Supp. at 1240.

 The question of whether Ware committed the fatal shooting while acting under color of law is not so easily resolved. It is clear that it is not simply the clothing or duty status of a police officer that determines whether or not he acted under color of state law. *Stengel v. Belcher*, 522 F.2d 438, 441 (6th Cir. 1975), *cert. dismissed*, 429 U.S. 118, 97 S.Ct. 514, 50 L.Ed.2d 269 (1976); *Johnson v. Hackett*, 284 F.Supp. 933, 937 (E.D.Pa.1968). Instead, it is necessary to scrutinize the nature of the act performed. *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), *overruled on other grounds, Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). If Ware was enabled to do what he did because of the authority of his office, even if what he did constituted an abuse of that authority, either because of the excessiveness of his conduct or because the act was not actually, although apparently authorized, the act would be under color of law. *United States v. Classic*, 313 U.S. 299, 325–26, 61 S.Ct. 1031, 1042–43, 85 L.Ed. 1368 (1941), *Johnson*, 284 F.Supp. at 937. On the other hand, not all acts by a state official are under color of law. *See Parrett*, ⸺ U.S. at ⸺ n. 10, 101 S.Ct. at 1921 n. 10, 68 L.Ed.2d at 439 n. 10 (1981) (Powell, J. concurring). The conduct of a police officer, however outrageous, is not actionable under § 1983 merely because he is a police officer. *Paul v. Davis*, 424 U.S. 693, 717, 96 S.Ct. 1155, 1168, 47 L.Ed.2d 405 (1976). (Brennan, J. dissenting). Acts of police officers in the ambit of their personal, private pursuits fall outside of 42 U.S.C. § 1983. *Screws v. United States*, 325 U.S. 91, 111, 65 S.Ct. 1031, 1040, 89 L.Ed. 1495 (1945).

 Because of the nature of the inquiry necessary to a determination of the question of whether or not defendant Ware was acting under color of law when he allegedly shot decedent Walsh, we find that there remain genuine issues of material fact. These unanswered questions of fact can only be resolved by the factfinder at trial. Therefore, Ware's motion for summary judgment must be denied.