Roy K. BINGHAM and Pamela Y. Bingham, Plaintiffs,

v.

CITY OF PITTSBURGH, Raymond Cousins, Samuel McElrath, James W. Owens, Michael J. Kondas, Charles P. Bates, and Lana Price, Defendants.

Civ. A. No. 84–3110.

United States District Court, W.D. Pennsylvania.

April 16, 1987.

Glenn S. Sinko, Lawrence G. Zurawsky, Pittsburgh, Pa., for plaintiffs.

John George Shorall, II, D.R. Pellegrini, Dept. of Law, Bryan Campbell, Pittsburgh, Pa., for defendants.

## MEMORANDUM OPINION

MENCER, District Judge.

## I. INTRODUCTION

On December 31, 1984 plaintiffs, Roy K. Bingham and Pamela Y. Bingham,[1] filed a lawsuit against individual police officers employed by the City of Pittsburgh ("City")[2] and against the City itself. Plaintiffs allege that the individual defendants violated Mr. Bingham's civil rights by arresting him without probable cause and by using unlawful, unjustified and excessive force in carrying out the arrest. The City is implicated by reason of its allegedly unconstitutional policies which caused or permitted to be caused the unlawful acts perpetrated on plaintiff.

Pending before the Court is a summary judgment motion filed on behalf of the City. The City contends that it has no official policy which condones any of the following: the use of improper police practices; the inadequate training, supervision or discipline of its officers or the use of excessive force. In the absence of such a policy or policies there cannot, as a matter of law, be any § 1983 municipal liability. Therefore, according to the City, judgment should be entered in its favor.

In response to the motion for summary judgment, the plaintiff asserts that: (1) the motion is unsupported by record evidence; (2) the motion should not be granted while there are still outstanding interrogatories and requests for production, and (3) there is a genuine issue of material fact as to the existence of an official policy. For these reasons, the plaintiff urges the Court to deny the motion.

The Court finds that the defendant has complied with the requirements of Fed.R. Civ.P. 56, *see also Celotex Corp. v. Catrett*, —— U.S. ——, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and that the plaintiff's contention that the motion should be denied because discovery requests are still outstanding is untimely.[3] Therefore, concluding that there are no genuine issues of material fact, regarding the Defendant City of Pittsburgh, the Court will grant the defendant's motion for summary judgment.

## II. FACTUAL BACKGROUND

In the late evening hours of January 1, 1983, while the plaintiff, Roy Bingham, was managing "Leonard's Store," in Homewood, a number of males entered the premises and began making threatening re-

---

**1.** Roy K. Bingham and Pamela Y. Bingham are plaintiffs in this lawsuit. Since Pamela Bingham's claims are derivative, in its discussion of the § 1983 claims, the Court will employ the singular use of the word plaintiff.

**2.** In the complaint, the plaintiff named Raymond Cousins, Samuel McElrath, James W. Owens, Michael J. Kondas, Charles P. Bates and Lana Price as individual defendants.

**3.** In his brief in opposition to the motion for summary judgment, the plaintiff urges the Court to deny the motion because there are still outstanding discovery requests. The Court is not persuaded by this argument. The Court held a Status Conference on August 5, 1985 and set up a discovery period which was to close on November 18, 1985. Pursuant to two requests for extensions, discovery did not close until on or about March 4, 1986. At no time during the discovery period did the plaintiff file a motion to compel. It is over a year since the close of discovery, plaintiff cannot now be heard to complain about inadequate or insufficient compliance with discovery.

marks. With the thought of protecting the patrons, the property and himself, plaintiff demanded that the men leave the store. When they would not do so voluntarily, plaintiff retrieved and displayed a revolver that had been hidden under the counter. Predictably, the males dispersed.

Shortly thereafter, acting on a report that gunshots had been fired from inside "Leonards," Officers Cousins and McElrath entered the premises and approached plaintiff. Officer Cousins demanded that Mr. Bingham surrender his gun; plaintiff immediately complied with that demand. Next, Officer Cousins frisked and handcuffed Mr. Bingham. After the initial search was complete, without instigation or provocation, Officer Cousins began "roughing up" the plaintiff. This "roughing up", at least part of which was witnessed by five other police officers, continued to the point where plaintiff required emergency medical treatment.[4]

After he was treated at the West Penn Hospital emergency room, plaintiff was brought to the police station where criminal charges were filed against him. The charges included reckless endangerment and violation of the Uniform Firearms Act. All the charges were subsequently withdrawn or dismissed.

## III. SUMMARY JUDGMENT STANDARD

In reviewing a motion for summary judgment, the Court is governed by the standard set forth in Fed.R.Civ.P. 56(c). In pertinent part the Rule provides that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

The application of this standard requires that "[i]nferences to be drawn from the underlying facts contained in the evidential sources submitted to the trial court must be viewed in the light most favorable to the party opposing the motion." *Baker v. Lukens Steel Co.*, 793 F.2d 509, 511 (3d Cir.1986) *citing Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). Therefore, this Court must resolve all doubt, as to the existence of a genuine issue of material fact, in favor of the plaintiff.

Plaintiff contends that the motion for summary judgment must be denied because the City failed to properly support its motion. As explained by the Supreme Court in *Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), however: "[i]n cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Celotex Corp.*, 106 S.Ct. at 2553.

In the present case, the City based its motion for summary judgment on its answers to the complaint, wherein it specifically denied the existence of a constitutionally inadequate policy and/or custom. Therefore, as the nonmoving party, plaintiff must now, through affidavits or otherwise, establish the existence of a genuine issue of material fact. *Id.* Plaintiff may *not* rest or rely solely on the pleadings. *See* Fed.R.Civ.P. 56(e).

## IV. LEGAL DISCUSSION

### A. The *Monell* Standard

The pivotal case in the area of municipal liability under § 1983 is *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56

---

**4.** Roy Bingham described the altercation with Officer Cousins in the following way:

[Officer Cousins] grabbed me, pulled me up back by the handcuffs, punched me in the face, rammed me against the pop box, punched me in the face, pulled a pistol out, put it to my head and told me he should kill

me. He put it in my mouth and knocked me in the mouth with the butt of the gun. Then he took me and threw me further. I went into this glass candy case. I went through the glass and fell on the floor.

Plaintiff's Deposition at 34–35.

L.Ed.2d 611 (1978). Reversing its earlier decision in *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), the Supreme Court in *Monell* held that a municipal corporation is a person for purposes of § 1983. A municipality may, therefore, be liable for damages that arise out of a violation of constitutional rights. As determined by the Court in *Monell,* however, municipal liability is not without limits.

▉ In addressing the exposure of municipal corporations to § 1983 liability, the *Monell* Court expressly excluded liability based on principles of respondent superior. *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036. Rather, the Court held, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694, 98 S.Ct. at 2037. Thus, under § 1983, a municipal corporation is not liable for the acts of its employees *unless* there is an official policy which caused the plaintiff's injury.

The official policy requirement has been identified as the causation element in § 1983 actions. In his concurring opinion in *City of Oklahoma v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), Justice Brennan analyzed this element.

> In a § 1983 case involving a municipal defendant, the causation element to be proved by the plaintiff may be seen as divided into two parts. First, the plaintiff must predicate his recovery on some particular action taken by the city, as opposed to an action taken unilaterally by a nonpolicymaking municipal employee.... [T]he plaintiff would carry his burden by proving the existence of a particular official municipal policy or established custom.... Second, the plaintiff must prove that this policy or custom "subjected" or "caused him to be subjected" to a deprivation of a constitutional right. *Id.* at 829–30, 105 S.Ct. at 2439.

Therefore, before municipal liability will attach, a plaintiff must demonstrate both the existence of a policy and a causal link between the policy and the alleged injuries.

*See Losch v. Borough of Parkesburg,* 736 F.2d 903, 910 (3d Cir.1984).

The plaintiff, in the instant case, alleges three separate policies pursuant to which municipal liability should attach. These policies are: (1) failure to terminate improper police practices; (2) failure to adequately train, supervise, and discipline City police officers and (3) failure to investigate and correct behavior of police officers who have demonstrated a propensity to use excessive force. The Court will examine each alleged policy individually.

### B. Improper Police Practices

▉ The plaintiff asserts that the City is liable under § 1983 for failing to terminate "improper police practices." Reading the complaint in the light most favorable to the nonmoving party, the allegedly improper practices include arresting persons without probable cause and using excessive force in carrying out arrests. In regard to these police practices, plaintiff offers no proof of prior police acts.

In both *Monell* and *Pembaur v. Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), the Supreme Court found that a municipality was liable under § 1983 for a single incident that resulted in the deprivation of a constitutional right. Those cases involved circumstances where the official policy was itself unconstitutional. As announced by the Supreme Court in *Tuttle,* however, "where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality and the causal connection between the 'policy' and the constitutional deprivation." *Tuttle,* 471 U.S. at 824, 105 S.Ct. at 2436, 85 L.Ed.2d at 804.

Since the policy in the instant case is "far more nebulous, and a good deal further removed from the constitutional violation" in *Monell,* more than a single episode of police misconduct is required to trigger an inference of a policy. *Tuttle,* 471 U.S. at 822, 105 S.Ct. at 2436. *See also Wellington v. Daniels,* 717 F.2d 932 (4th Cir.1983); *Languirand v. Hayden,* 717 F.2d 220 (5th

Cir.1983), *cert. denied* 467 U.S. 1215, 104 S.Ct. 2656, 81 L.Ed.2d 363 (1984).[5] Despite the allegations in the complaint, plaintiff has failed to produce any evidence of prior improper police conduct. Short of the production of such evidence, it cannot be inferred that there was a policy which either encouraged or condoned improper acts carried out by police officers. Plaintiff has fallen short in his production of evidence; the City's motion for summary judgment, as it pertains to improper police practices, shall be granted.

### C. Failure to Train, Supervise or Discipline

■ The plaintiff contends that the City had a *de facto* policy of improperly training, supervising and disciplining its police officers.[6] In support of this allegation plaintiff referred the Court to the City's Internal Investigation Procedures. Appendix B, paragraph 7 of the Procedures provides "[w]hen a police officer is accused of misconduct on either a departmental charge or on a citizen complaint and the charge or complaint is unfounded, then all records of the investigation are to be destroyed one year after the investigation is completed." According to the plaintiff, the City's policy of destroying records of complaints, creates an atmosphere of tacit approval of police misconduct.

Although the plaintiff has arguably identified an official policy, he has failed to establish a causal link between the policy and the injuries he sustained. The existence of a policy is clearly not sufficient. As articulated by the court in *Mariani v. City of Pittsburgh*, 624 F.Supp. 506, 509 (W.D.Pa.1986) "to sustain his burden, plaintiff must develop facts which demonstrate

an 'affirmative link" between the misconduct of the individual officer and some policy, express or implied, which has been adopted or authorized by the City.... [In other words] [t]he official policy must be the 'moving force' behind the constitutional violation." (citations omitted). *See also Kranson v. Valley Crest Nursing Home*, 755 F.2d 46 (3d Cir.1985).

The facts in the pending case do not support a conclusion that the City's policy was the moving force behind the constitutional violation inflicted by the police officers. The City's policy of destroying records of *unfounded* complaints, cannot support even an inference of municipal approval of unconstitutional acts. Plaintiff has offered no proof of a nexus between the City's policy and the police misconduct complained of. *See King v. Ware*, 522 F.Supp. 1206, 1209 (W.D.Pa.1981). Without the essential link between the policy and the unconstitutional act there can be no municipal liability.

■ As an additional basis for municipal liability the plaintiff contends that the City *failed to comply* with paragraph 7 of the Internal Investigation Procedures. Pursuant to a discovery request, plaintiff learned that Officer Cousins' file contained no record of his 1982 and 1984 criminal convictions. Clearly, these claims were not "unfounded" and evidence of them should have been contained in Officer Cousins' file, argues the plaintiff.

The problem with plaintiff's position, in regard to the inaccurate record of Officer Cousins' file, is two-fold. First, a careful reading of the City's Procedure reveals that while the City may have had an af-

---

5. It is possible to infer that certain acts or omissions constitute a policy or custom, if the acts or omission amount to either tacit approved or deliberate indifference to unconstitutional conduct. *Estate of Bailey v. County of York*, 768 F.2d 503, 508 (3d Cir.1985); *Wellington*, 717 F.2d at 935–37.

6. In a footnote in *Tuttle*, 471 U.S. at 824 n. 7, 105 S.Ct. at 2436 n. 7, the Supreme Court stated:

We express no opinion on whether a policy that itself is not unconstitutional, such as the general 'inadequate training' alleged here, can

ever meet the 'policy' requirement of Monell. In addition, even assuming that such a 'policy' would suffice, it is open to question whether a policymaker's 'gross negligence' in establishing police training practices could establish a 'policy' that constitutes a 'moving force' behind subsequent unconstitutional conduct, or whether a more conscious decision on the part of the policymaker would be required. *See also Springfield v. Kibbe*, —— U.S. ——, 107 S.Ct. 1114, 1116, 94 L.Ed.2d 293 (1987) (O'Connor, J., dissenting)

firmative duty to destroy records of unfounded claims, it is not clear that it had an affirmative duty to maintain records of legitimate claims. Absent proof of an affirmative duty to maintain records there is no evidence of an official policy or the breach of such a policy.[7] Therefore, plaintiff's initial burden is to prove that the City had a policy of disregarding or failing to consider the criminal misconduct of its officers.

The necessity of establishing this policy creates an additional hurdle for plaintiff. The evidence demonstrates that Officer Cousins had been arrested on a number of occasions. The evidence also indicates that Officer Cousins engaged in violent behavior on those occasions. However, two of the three violent episodes that Officer Cousins was involved in occurred after January 1, 1983 and thus have no causal connection or link to the existence of an official policy in 1983. Clearly, events that transpired subsequent to January 1, 1983 could not have caused or been the moving force in causing the injuries that plaintiff sustained at that time. Therefore, Cousins' 1984 conviction and his 1985 arrest are irrelevent to a showing of an official policy in 1983.

Thus the Court must determine whether the failure of the City to maintain a record of Officer Cousins' 1982 conviction is sufficient to establish the existence of a policy. The Court holds that it is not. As the Court in *Tuttle* held, "where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case." *Tuttle*, 471 U.S. at 824, 105 S.Ct. at 2436. The evidence available in the present case does not constitute "considerably more proof than the single incident." Therefore, the standard set forth in *Tuttle* has not been satisfied and the City's motion must be granted.

### D. Condoning the Use of Excessive Force

Finally, plaintiff alleges that the City's failure to investigate and/or remedy the improper use of excessive force, employed by some of its police officers, constituted a *de facto* policy. Plaintiff also asserts that the policy is causally connected to the injuries he sustained at the hands of the City's employees. Therefore, according to the plaintiff, the City should be liable for the damages he incurred.

The plaintiff's claim, that the City sanctioned the use of excessive force, is not novel. For the most part, however, courts have been reluctant to find that use of excessive force is an official policy. *See, e.g., Voutour v. Vitale*, 761 F.2d 812, 820 (1st Cir.1985), *cert. denied*, — U.S. —, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986); *Vippolis v. Village of Haverstraw*, 768 F.2d 40 (2d Cir.1985), *cert. denied*, — U.S. —, 107 S.Ct. 1369, 94 L.Ed.2d 685 (1987); *Gilmere v. City of Atlanta, Georgia*, 774 F.2d 1495, 1503 n. 7 (11th Cir.1985), *cert. denied*, — U.S. —, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986). In only the most exceptional case will the facts support a municipality's affirmative encouragement of the use of excessive force. Rather the more common ground for such a claim is a municipality's acquiescence in the use of excessive force.

Again, absent a concrete official policy, like the policy in *Monell*, an inference of the existence of a policy can only be drawn from a well-established pattern. *See Brandon v. Holt*, 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985); *Herrera v. Valentine*, 653 F.2d 1220 (8th Cir.1981). An isolated episode of a police officer using excessive force will not be sufficient to prove a pattern. Supreme Court precedent, and the case law that has applied that precedent, demonstrate that more is required. *See, e.g., Tuttle*, 471 U.S. 808, 105 S.Ct. 2428; *Strauss v. City of Chicago*, 760 F.2d 765 (7th Cir.1985).

---

**7.** Considering the source of the "policy"—the Working Agreement Between the City of Pittsburgh and the Fraternal Order of Police Fort Pitt Lodge No. 1.—it is not surprising that there is no evidence of a "policy" regarding the maintenance of records of claims. The Court does not mean to suggest that the City had no policy, rather the source of that policy was not likely to be a collective bargaining agreement.

Plaintiff bases his allegation of a policy of acquiescence on four incidents that involve Officer Cousins. The first incident, involving a "domestic dispute," occurred in December 1982, and resulted in a criminal conviction. The second incident is the one that led to the filing of this lawsuit. The remaining two events involve a conviction in 1984 for harassment, *see* Plaintiff's Exhibit F–1, and an arrest in 1985 for terroristic threats and simple assault, *see* Plaintiff's Exhibit E–1. Plaintiff suggests that the above events constitute "a long history of repeated brutality and unjustifiable use of excessive force."

As the Court held in its discussion regarding improper training, the events that occurred in 1984 and 1985 are irrelevant to a consideration of what the City's policy was in 1983. Therefore, in determining whether the City had a policy of acquiescing in the practice of excessive use of force, the Court may only consider Officer Cousins' 1982 conviction and the January 1, 1983 event. Again, without more evidence, the Court cannot conclude that the City engaged in a policy of acquiescing in its employees use of excessive force.

## V. CONCLUSION

As set forth in the complaint and further detailed in Mr. Bingham's deposition testimony, the events that transpired, during the late evening hours of January 1, 1983, and continued on into the early morning hours of the following day, were calamitous. The alleged unconstitutional acts inflicted on Roy Bingham, by City of Pittsburgh police officers, are inexcusable. Although the Court is not unmoved by these tragic events, the law precludes recovery against a municipality absent a showing of an official policy.

In *Monell*, the Supreme Court expressly limited municipal liability to cases where an official policy is the moving force behind constitutional violations. As commanded by the Supreme Court, a municipality cannot be held liable for the acts of its employees absent a showing of a policy and a causal connection between that policy and the injuries suffered.

Therefore, the plaintiff in the instant case must demonstrate that there is a genuine issue of material fact regarding both an official policy and the causal connection between that policy and his injuries. The plaintiff has failed to satisfy this burden. The Court concludes that there is insufficient evidence to create an inference that the City had a policy of condoning either improper police practices, or the use of excessive force. Similarly, the Court concludes that the plaintiff has failed to establish that the City had a policy of disregarding "well-founded" complaints lodged against police officers. Finally, the Court finds that there is no causal connection between the City's "policy" of destroying unfounded complaints and the injuries sustained by the plaintiff.

Concluding that there are no genuine issues of material fact, this Court will grant the City's motion for summary judgment.

An appropriate order shall be issued.